[Crim. No. 13291.    Second Dist., Div. One.    Aug. 9, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. VICTOR FRANK SZIJARTO, Defendant and Appellant.

Karl K. Ransom for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Andrea Sheridan Ordin, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—In a court trial defendant·was convicted of forcible rape (§ 261, subd. 3, Pen. Code) ; probation having been denied, he was sentenced to the state prison. Appeal is from the judgment of conviction and order denying motion for new trial. The appeal from the order is dismissed.

The contention is made that defendant was inadequately represented at the trial, more specifically, that his then counsel should have moved for a continuance, or at least have requested a hearing, to determine defendant's competency to stand trial. (§ 1368, Pen. Code.)[1] The further claim is made that the court committed reversible error in failing to conduct a hearing to determine the question of defendant's competency (the ability to assist in his own defense) when it was challenged on the motion for new trial, or, in the alternative, by omitting to allow the introduction of additional evidence which would have presented a doubt as to such competency.

[1] "If at any time during the pendency of an action and prior to judgment a doubt arises as to the sanity of the defendant, the court must order the question as to his sanity to be determined by a·trial by the court without a jury, or with a jury, if a trial by jury is demanded. . . ."

The sufficiency of the evidence to support the finding of guilt is not here disputed. Admittedly the victim, aged 17 and then selling magazines door to door, was in defendant's apartment for at least 20 to 25 minutes on the afternoon in question; according to the victim, the period of time was considerably longer. She was admitted to the apartment about 4:30 p.m. and gave defendant a "sales pitch"; he finally agreed to take Look Magazine for $11. After offering her something alcoholic to drink, he made improper advances; when the victim began to cry, defendant wrote out a check for $21, telling her to use the extra ten dollars as she saw fit. He then backed her against the wall offering to give her a hundred dollar bill and telling her she was not going to leave until she submitted to him. Finally, an act of intercourse was accomplished on the floor in the front room while she was in fear of her life. Almost immediately thereafter she ran out to the street where she encountered her supervisor.

There was evidence that the apartment house manager saw the victim about 6 p.m. in front of the building; previously she had heard two long screams, 5 to 10 minutes intervening between them; the victim was hysterical and told her supervisor what had occurred. A deputy sheriff, who arrived at the scene about 10 minutes later, also testified to the victim's physical appearance—"crying and apparently very upset and shaken." Another officer subsequently interrogated defendant in the latter's apartment; although defendant stated that the victim had not been on the premises, the officer found certain subscription receipts left there by her.

Defendant admitted that the victim was in his apartment and that he wrote the $21 check, but denied that there were any improper advances, much less the criminal assault charged. Defendant's testimony and other evidence tending to discredit the victim's narrative were rejected by the trial court: "There isn't a shred of evidence upon which this defendant could have me believe that he did other than what this person, without guile [testified]—I judged her on the witness stand." (Rep.Tr. p. 91.)

Appellant's claims, singly and collectively, are grounded upon the rule established in *Pate* v. *Robinson*, 383 U.S. 375 [15 L.Ed.2d 815, 86 S.Ct. 836] and thereafter followed in *People* v. *Pennington*, 66 Cal.2d 508 [58 Cal.Rptr. 374, 426 P.2d 942] : "*Pate* v. *Robinson* stands for the proposition that an accused has a constitutional right to a hearing on present sanity if he comes forward with substantial evidence that he is incapable, because of mental illness, of understanding the

nature of the proceedings against him or of assisting in his defense. Once such substantial evidence appears, a doubt as to the sanity of the accused exists, no matter how persuasive other evidence—testimony of prosecution witnesses or the court's own observations of the accused—may be to the contrary." (66 Cal.2d at p. 518.) ▉▉ As to the inadequacy of representation by counsel, appellant argues that immediately prior to trial his then attorney was shown a letter from a medical doctor which demanded the steps later taken unsuccessfully by substituted counsel. The letter was addressed to another attorney representing defendant in his divorce proceedings and stated (in part) that defendant "is not physically or emotionally well," and "was under excessive stress and required considerable sedation. . . ." According to appellant, this letter was shown by him to his former attorney with a request that a continuance be requested; the latter, however, denied that any such request was made or that the matter of a continuance was even discussed. Reference is also made to another letter from the same doctor, addressed to substituted counsel, which declared (in part) that defendant's "major problems have been of an emotional nature with such resulting symptoms as nervous tension, depression, insomnia. . . ." We note, however, the concession therein made that defendant "was permitted to attend to some pressing legal problems during that period [of observation] . . . [although] his state of health was such that it would have been better not to have been subjected to this added stress at that time. . . ." In neither of such communications is there any intimation that defendant was so disoriented that he could not (1) understand the nature of the proceedings against him or (2) assist his attorney in the conduct of a defense in a rational manner. These are salient factors of the "substantial evidence test" which compelled a different result in *Pate* and *Pennington* and, therefore, distinguish those cases from that at bar.

The claim is also made that since defendant's trial counsel admitted reading the first of the above letters, knew that his client had been specially released from a hospital for the within criminal proceedings, and did not even bother to discuss with defendant the latter's ability to aid in his own defense, such omission constituted gross negligence and was per se violative of defendant's right to due process within the rule laid down in Pate. As shown above, the communication was barren of any facts which, reasonably evaluated, meet the test

defined in the cited case. Nor does the record in any way disclose the inability of the accused to cooperate with counsel in the presentation of his defense. Contrary to the apparent suggestion that the trial was reduced to ''a farce or a sham'' (*People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]), a reading of the transcript reveals effective aid by counsel (described by the court as ''almost vituperative . . . in his zeal to defend his client'' [Rep.Tr. p. 120]) and the giving of testimony on defendant's part which was both lucid and articulate in character. We find no merit in the assignment of error.

■ The remaining contentions relate to the court's refusal to order a sanity hearing under section 1368, Penal Code, as requested upon defendant's motion for new trial. The request, of course, was seasonably made because, as pointed out in *Pennington,* the statute requires the trial judge ''to consider all evidence of present insanity presented to him *prior to sentencing* and to order a hearing on his own motion if the evidence raises a doubt of the accused's competence to stand trial.'' (Italics added; 66 Cal.2d at p. 520.) It is contended that the first of the letters from defendant's doctors contained evidence of mental incompetence sufficiently substantial to raise a doubt in the mind of the court; as noted earlier, defendant is therein described as being ''emotionally [un]well,'' and that he ''was under excessive stress and required considerable sedation. . . .'' Emphasized is the ''considerable sedation'' which, it is argued, affects a person's ability ''to think quickly, to recall clearly, and to elucidate properly, especially under hostile cross-examination. . . .'' Such argument would have more persuasive force had it been made prior to trial; however, the trial having here been concluded, the judge had the benefit of personal observation of the asserted effect (if any) of such sedation upon the defendant's competence during the course of the prior proceedings. While we have referred to the lucid manner in which defendant testified, he nevertheless points out (citing both *Pate* and *Pennington*) that isolated instances of such lucidity do not necessarily mean that the critical test of competence has been met; but in the present case there is nothing in the record to indicate that defendant's general behavior was susceptible of even a suspicion that he was not fully oriented and able to assist counsel as required by the governing cases. Too, we note the post-*Pennington* decision in *People* v. *Laudermilk,* 67 Cal.2d 272 [61 Cal.Rptr. 644, 431 P.2d 228], where, according

to an expert, the accused was "dejected," and "moderately depressed," that much of his speech appeared to have a "paranoid flavor" and he was possessed of a " 'Paranoid personality, severe.' " The same expert nevertheless found that defendant was not incompetent to stand trial; the trial judge agreed and the reviewing court affirmed. In the present case, the letter relied on significantly omits to include a medical judgment that defendant was unable to meet the level of competence required by the governing authorities. Under all of the circumstances it cannot be said that the trial judge should have been confronted with a doubt respecting defendant's sanity sufficient to order a hearing pursuant to section 1368.

Subsidiary to the above is the further contention that the court erroneously refused to entertain the reception of additional evidence which assertedly would have supported or "clinched" the claim that defendant was incompetent to stand trial. The record does not sustain this contention; as we view it, the court foreclosed any further evidence relating to the alleged inadequacy of legal representation. Even so, the additional evidence which defendant asserts he was foreclosed from presenting went to the matter of his sedation and its effect upon his ability to comprehend the nature of the proceedings and to cooperate reasonably in his defense. After observance of defendant during the entire trial, the court presumably concluded that the effect of such sedation was minimal, if not nil, and certainly not in the category requiring the sanity hearing presently contended for; and insofar as reflected by the record, the trial judge's action is fully supported.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.