OPINION OF THE COURT
Gerald Sheindlin, J.
The defendant was indicted for murder in the second degree and attempted murder in the second degree, it being alleged that on November 27, 1986 she caused the death of her four-year-old son, Laurence, and caused serious injury to her five-year-old son, Lamont, by throwing both children out of her fourth floor apartment window.
The court is confronted with the question of whether to accept a plea of guilty, to manslaughter in the first degree, from a defendant who is competent to stand trial, but suffers from traumatic amnesia leaving her unable to recall the events leading to her indictment.
*242 The evidence which would be presented by the People at a trial was placed on the record in open court before the defendant and her attorney. In substance it is as follows:
At the time of the incident the defendant was living at 1560 Metropolitan Avenue, apartment 4-B, in The Bronx. She resided there with her mother, her husband and two sons from a prior relationship.
During the early morning hours of November 27, 1986 a member of defendant’s family called the police to seek their assistance in having the defendant committed to a hospital because she was acting "emotionally disturbed”.
Police Officer Stone of the 43rd Precinct responded to the call. The officer’s notes indicate that the defendant was acting in a strange way. The officer was of the opinion that there may have been cocaine or crack use by the defendant.
As the police were leading the defendant out of her house her husband had second thoughts and told the police that he would care for the defendant, and if unable to do so, he would call them again. The police left the defendant with her husband.
At approximately 1:45 a.m. the defendant again began to act strangely. However, she eventually appeared to regain control and apologized to those present in the apartment for her strange behavior.
Later, the defendant went into a bedroom with her two sons. She requested some tea from either her mother or hér husband. While alone in the bedroom with the two children, she locked the door from the inside.
She grabbed her youngest son and threw him out of the window. Landing on the sidewalk, four stories below, the youngster died as a result of the fall. She then proceeded to toss her five-year-old son out of the same window. According to the child’s Grand Jury testimony, as he was being placed out of the window he was able to grab hold of the outside iron railing on the casement window. The defendant proceeded to pry open his hands causing him to fall some four stories to the soft ground surrounding the building. This child suffered two fractured legs and other injuries. He was admitted to the hospital in critical condition, but did survive.
After throwing her two sons from the, window the defendant jumped out of the window and fell to the ground below. The defendant suffered injuries to her spine and her legs, leaving her unable to walk and wheelchair bound.
*243 The police arrived, and discovered the three people on the ground in front of the building. Eventually the police gained entry to the bedroom by breaking down the door and found it to be empty.
The names of two individuals who saw the defendant shortly before the incident were turned over to the defense. A letter from defendant’s husband indicating a willingness to testify against her was placed into evidence.
Grand Jury testimony of the defendant’s mother and surviving son were read into the record. Both are available to testify. Photographs of the scene and relevant medical records were introduced into evidence.
Subsequent to the defendant’s arrest on November 28, 1986 and her hospital arraignment on December 23, 1986 a psychiatric examination was ordered pursuant to CPL article 730.
A psychiatric examination conducted on February 10, 1987 revealed that the defendant was unfit to proceed to trial due to organic affective disorders, cocaine abuse (by history) and possible organic brain injury.
Further psychiatric examinations conducted on September 8, 1987, revealed that the defendant was competent to proceed to trial. However, a diagnosis of traumatic amnesia was made as a result of the defendant’s inability to recall the events leading to her arrest. The defendant was declared competent to proceed shortly thereafter, without opposition.
The defense attorney stated on the record that he consulted with Dr. Peter Schiffman, a psychiatrist, who examined the defendant at the request of the defense and concluded that an insanity defense or a diminished capacity defense would probably not be successful in this matter.
In People v Francabandera (33 NY2d 429), the Court of Appeals dealt with the issue of "whether defendant, suffering from retrograde amnesia so as to be unable to recall the events surrounding the crimes with which he is charged, is an 'incapacitated person’ within the meaning of CPL 730.10 (subd. 1) so as to be unfit to stand trial as the result of a mental defect which, he argues, deprives him of the capacity to assist in his own defense; and also whether the ruling that he is fit to stand trial which induced a guilty plea to a reduced charge, renders that plea involuntary thereby denying him due process and equal protection.” (People v Francabandera, supra, at 432.)
In analyzing the nature of the guilty plea in this situation *244 the court noted that it "approaches the nolo contendere concept operative in the Federal courts.” (People v Francabandera, supra, at 434.)
In North Carolina v Alford (400 US 25), the United States Supreme Court considered the question of whether it was constitutional error to accept a guilty plea entered by a defendant who disclaimed guilt.
After the defendant’s plea of guilty was offered and the State’s case was placed before the Judge, Alford testified that he had not committed the murder but that he was pleading guilty because he faced the threat of the death penalty which he desired to avoid.
The court in determining whether such a guilty plea was involuntary explained that "Ordinarily, a judgment of conviction resting on a plea of guilty is justified by the defendant’s admission that he committed the crime * * * and his consent that judgment be entered without a trial of any kind. The plea usually subsumes both elements”. (North Carolina v Alford, 400 US 25, 32, supra.)
In Alford (supra) the first element was absent. The defendant consented to the entry of a judgment of guilt but he not only refused to admit guilt, he claimed innocence.
The Supreme Court compared the situation in Alford (supra) to that where a prison sentence is imposed after a plea of nolo contendere.
Although "it is impossible to state precisely what a defendant does admit when he enters a nolo plea in a way that will consistently fit all the cases” (North Carolina v Alford, supra, at 35, n 8), the court refused to distinguish "between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when * * * a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt.” (North Carolina v Alford, supra, at 37.)
The principles set forth in Alford (supra) are consistent with New York law. (See, People v Serrano, 15 NY2d 304; People v Seaton, 19 NY2d 404, 407.)
In the instant case, wherein the defendant suffers from amnesia, she requests that the court accept her plea of guilt, despite her inability to address the element of her own guilt due to her genuine lack of recall of the events leading to her prosecution.
*245 Conceptually, as in Alford (supra), the failure to admit actual guilt should not cause the plea to be rejected. Given the circumstances, her choice appears to be an intelligent one and in her best interest. However, another factor must be explored before the court may accept the plea.
In this matter, unlike Francabandera (supra), the defendant urges that she is fit to proceed to trial, and, indeed, was declared not to be an incapacitated person pursuant to CPL article 730. The court must, nevertheless, make a determination as to whether defendant’s amnesia would lead to a denial of due process or of her right to effective assistance of counsel if she were to proceed to trial. For if the defendant did not have the option of obtaining a fair trial, her admission of guilt must be considered involuntary and unacceptable. In dealing with this problem the Court of Appeals chose to follow the reasoning in Wilson v United States (391 F2d 460), where "a case-by-case approach to the amnesic defendant was advocated so that in each situation the Judge would have to prognosticate on the basis of all the circumstances whether defendant was likely to receive a fair trial; and then, at the conclusion of the trial and before imposition of sentence, the Judge would again have to decide whether defendant did, in fact, receive a fair trial — this by the application of certain tests advocated by the court.” (People v Francabandera, 33 NY2d 429, 436, supra.)
Therefore, it is incumbent upon this court to "determine whether, under all the circumstances and with regard to the nature of the crime and the availability of evidence to the defendant, it is likely [s]he can receive a fair trial.” (People v Francabandera, supra, at 438.)
In making this prognostic determination the court will use as a guide the various factors set forth in Wilson v United States, (391 F2d 460, supra), which are the standards used in evaluating whether the completed trial of an amnesic was a fair one. (See, People v Soto, 68 Misc 2d 629.)
(1) THE EXTENT TO WHICH THE AMNESIA EFFECTS THE DEFENDANT’S ABILITY TO CONSULT WITH AND ASSIST HIS LAWYER.
Here, the court finds that the defendant is capable of discussing and assisting counsel with the case. The events leading to the homicide, the defendant’s background and surrounding circumstances were disclosed. The defendant demonstrated the ability to discuss the case with her lawyer and to accept or reject his advice.
*246 (2) THE EXTENT TO WHICH THE AMNESIA AFFECTS THE DEFENDANT’S ABILITY TO TESTIFY IN HER OWN BEHALF.
Certainly the defendant’s ability to testify in her own behalf is severely limited by her lack of recall. However, given the evidence presented, it appears that the only viable defense is lack of intent to commit the crimes. Clearly, this could be established by evidence outside of the defendant’s own testimony.
(3) THE EXTENT TO WHICH THE EVIDENCE COULD BE EXTRINSICALLY RECONSTRUCTED IN VIEW OF THE DEFENDANT’S AMNESIA. SUCH EVIDENCE WOULD INCLUDE EVIDENCE RELATING TO THE CRIME ITSELF AS WELL AS ANY REASONABLY POSSIBLE ALIBI.
The evidence has been extrinsically reconstructed in great detail and placed before the defense. The People’s witnesses have been fully identified. Grand Jury testimony of key witnesses has been read into the record in the presence of the defense. The relevant medical evidence has been revealed to the defense. The reconstruction also indicates that there is not a reasonable possibility of an alibi. Counsel for the defense indicates that would not be a viable defense in view of the uncontroverted facts that only the defendant was in a room locked from the inside with her two children immediately prior to the incident.
(4) THE EXTENT TO WHICH THE GOVERNMENT ASSISTED THE DEFENDANT AND HIS COUNSEL IN THAT RECONSTRUCTION.
The People have given full assistance and full disclosure to the defense in reconstructing the evidence.
(5) THE STRENGTH OF THE PROSECUTION’S CASE. IN PARTICULAR WHETHER THE EVIDENCE TENDS TO NEGATE ALL REASONABLE HYPOTHESES OF INNOCENCE.
The defendant is faced with a strong case against her including direct evidence of her guilt. Given the extent of the evidence placed on the record the court concludes that the People’s case is such as to negate all reasonable hypotheses of innocence. Furthermore, as indicated, the possibility of an alibi defense, even if the defendant would have recall of the incident, is unlikely.
Accordingly, the court concludes that the defendant could have received a fair trial and that the defendant’s plea of guilty to manslaughter in the first degree was an intelligent and voluntary one and is accepted by this court.