**STATE of Utah, Plaintiff and Appellee,**

v.

**Dennis Arthur YOUNG, Defendant and Appellant.**

**No. 870233.**

Supreme Court of Utah.

Sept. 26, 1989.

---

David L. Wilkinson, Barbara Bearnson, Salt Lake City, for plaintiff and appellee.

James A. Valdez, Elizabeth A. Bowman, Salt Lake City, for defendant and appellant.

STEWART, Justice:

Following a bench trial, Dennis Arthur Young was convicted of aggravated kidnapping, kidnapping, two counts of aggravated sexual assault, and one count of aggravated robbery. Two issues are raised on this appeal: (1) whether the defendant was denied due process when he was forced to proceed with the trial after the judge ruled that the defendant was not competent to change his plea at one point during trial; and (2) whether there was sufficient evidence to convict the defendant on both counts of aggravated sexual assault and whether those counts grew out of a single criminal episode or whether one was a lesser included offense of the other.

## I. STATEMENT OF FACTS

On September 11, 1986, at about 1:15 p.m., Mrs. L., the victim, and her two-year-old son were sitting in the front seat of their car at a car wash in Magna, Utah. Suddenly, a knife-wielding man jumped into the car and demanded that Mrs. L. move over to the passenger seat. Mrs. L. attempted to escape, but was stopped and

warned that if she did what she was told, no one would get hurt. The man held the knife against Mrs. L. as he drove away from the car wash.

The man drove a considerable distance on a highway out of Magna and then on some small dirt roads, traveling slowly and carefully while looking for a secluded place. He talked to Mrs. L. as he drove, mentioning, among other things, that her gas gauge registered low and that her generator light was on. When he stopped, he caused the car to become mired in mud.

The man then forced Mrs. L. into the back seat of the car and tied her wrists and ankles. Finding only three or four dollars in her purse, the assailant said, "This isn't good enough." He then pulled her two shirts over her head and in the process touched her breasts. Turning her over onto her back, he pulled off her trousers and underpants and began to rub some type of lubricant on her anal area. She felt something she thought to be his finger penetrate her rectum. She also felt pain in this area and then felt his non-erect penis rubbing on and around her anal opening. She later testified that she thought no penile penetration had occurred. Before leaving, the man asked Mrs. L. for her credit card and PIN number, asking her to repeat the number backwards to make sure she was not lying to him. He then attempted to wipe off any fingerprints he might have left on the car.

Mrs. L. flagged down a truck and shortly thereafter called the police. The police found the defendant walking about two miles from the scene of the assault. Detectives found Mrs. L.'s credit card and keys and the knife used in the assault a short distance from where the defendant was apprehended. The defendant did not appear to be intoxicated, his eyes were not dilated, and he had good motor coordination.

Prior to trial, the defendant filed a notice that he would rely on the defense of diminished capacity, and two alienists, Dr. Heinbecker and Dr. Clark, were appointed to examine him. Dr. Heinbecker testified that the defendant had a mental illness which consisted of (1) dysthymic disorder (mild to moderate depression), (2) alcohol abuse, (3) mixed drug disorder, and (4) attention deficit disorder. Dr. Clark testified that the defendant did not suffer from any mental illness, or at least not any that would be relevant to criminal responsibility. He diagnosed the defendant as having an antisocial personality disorder, which, he said, was not a mental illness.

The defendant testified twice at the trial. First, he claimed that he had no recollection of an encounter with Mrs. L., but could only recall smoking marijuana in a bar in Magna. During the fourth day of trial, defense counsel moved to allow the defendant to plead guilty and mentally ill on all counts. The defendant again testified and declared that he had previously lied and now wished "to get it over with." The trial judge, noting the defendant's obvious state of emotional distress, stated that he would take the plea only if it were evident that the defendant understood the nature of his request and was making it voluntarily. Apparently concluding that the defendant's request was not made in a wholly deliberate and knowing manner, the judge refused the plea. The defendant was subsequently found guilty on five counts and not guilty on one count. The trial court did not decide whether the evidence of the defendant's mental illness required hospitalization in the state hospital.

## II. COMPETENCE TO STAND TRIAL

■ The defendant's first argument is that he should have been given a hearing on his competency to stand trial. He asserts that when he tendered a plea of guilty and mentally ill, the trial judge rejected the plea on the ground that the defendant was incompetent to change his plea. After the trial judge refused to allow the changed plea, defense counsel stated, "Here's the problem, judge. If he doesn't know what he's doing now, how is he going to assist with the rest of the trial?" The trial judge's reference to the defendant's incompetence to change his plea is the

foundation of the defendant's argument that he was incompetent to stand trial.[1]

Essential to the adversarial system of justice are safeguards assuring that only competent defendants are required to stand trial. A mentally incompetent defendant can provide no defense, and proceedings against such a defendant do not comport with due process. *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam), established the standard for determining competency to stand trial:

> [T]he "test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as a factual understanding of the proceedings against him."

362 U.S. at 402 (quoting brief of the Solicitor General).

Incompetency to stand trial is addressed by Utah Code Ann. §§ 77–15–1 through 77–15–9 (1982 & Supp.1989). Section 77–15–2 recites the standard for determining whether a defendant is competent to stand trial. It states:

> For the purposes of this chapter, a person
>
> is incompetent to proceed if he is suffering from a mental disease or defect resulting either:
>
> (1) In his inability to comprehend the nature of the proceedings against him or the punishment specified for the offense charged; or
>
> (2) In his inability to assist his counsel in his defense.

Sections 77–15–3(1) and 77–15–4 allow a petition to be filed in the district court by any party to the trial or at the judge's direction when the defendant "is or becomes incompetent," and § 77–15–5 requires a hearing on such a petition. *State v. Bailey,* 712 P.2d 281, 285 (Utah 1985), held that the trial court had no statutory duty to order a competency hearing in the absence of a petition. That ruling, however, was made in a case that had no evidence indicating incompetence on the part of the defendant to stand trial. There was only an unsubstantiated claim of incompetency. After the Court discussed *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), and *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), it held that there was no statutory duty to hold a competency hearing during the course of a trial in the absence of a petition and without some evidence of mental illness. An uncorroborated assertion of mental illness at trial was not sufficient to require a competency hearing. The defendant points out, however, that here the trial judge ruled that the defendant was incompetent to change his plea and argues that that is sufficient under the due process clause to require a hearing on the issue.

The defendant relies primarily on *Pate* and *Drope* to support his contention. In *Pate,* a murder defendant failed to properly raise the issue of his competency to stand trial, but asserted incompetence throughout the trial. The United States Supreme Court held that where there is some evidence of the defendant's incompetence to stand trial, the defendant did not waive the issue by his procedural default in not raising the issue in a proper fashion. 383 U.S. at 384, 86 S.Ct. at 841. The Court also held that if evidence of incompetence to stand trial becomes manifest during trial, it is a denial of due process for the trial court not to hold a hearing to inquire into the competence of the defendant. 383 U.S. at 385, 86 S.Ct. at 842. In *Drope,* the Court again emphasized the relevance of the defendant's conduct both before and during trial in determining whether a competency hearing should be held.

*Pate* and *Drope* do not require a competency hearing in this case. One doctor testified as to the defendant's drug and alcohol addiction and his occasional slight to moderate depressions. On the fourth day of trial, the defendant exhibited some

---

1. Utah Code Ann. § 77–13–6(1) (Supp.1989) states: "A plea of not guilty may be withdrawn at any time prior to conviction." Here, the defendant sought to change his plea to guilty and mentally ill, not just to guilty.

emotional distress. The trial court's statement that the defendant was incompetent to change his plea was based solely on the defendant's temporary emotional state at one point in the trial. The trial judge appears to have acted to protect the defendant from an act he might have later wanted to reverse.

There is nothing in the trial court's statement that suggested such a degree of mental disorder as to make the defendant incompetent to proceed. The defendant's display of emotional distress certainly did not show an inability to comprehend the proceedings against him or his lack of ability to assist counsel; nor did it rise to the level of a "mental disease or defect" under section 77–15–2. The trial court noted at the time of the defendant's tender of the guilty and mentally ill plea that the defendant was "distressed" and that such behavior was not "unusual under the circumstances" of defending serious criminal charges.

 It is well established that "[a]n allegation of 'nervous difficulties' does not raise a bona fide doubt as to competency." *People v. Wilson,* 28 Ill.App.3d 229, 231, 327 N.E.2d 502, 503 (1975) (citing *People v. Thompson,* 49 Ill.2d 220, 274 N.E.2d 15 (1971)). *See also People v. Szijarto,* 264 Cal.App.2d 828, 70 Cal.Rptr. 679 (1968); *Commonwealth v. Hall,* 15 Mass.App. 1, 443 N.E.2d 121 (1982); *Middaugh v. State,* 767 P.2d 432 (Okla.Crim.App.1988). Furthermore, mere distress, nervousness, or emotional upset at the time of pleading does not establish mental incompetence to plead, *Commonwealth v. Egan,* 322 Pa.Super. 71, 76, 469 A.2d 186, 189 (1983), nor does it raise a claim of constitutional dimension. *United States ex rel. Irving v. Henderson,* 371 F.Supp. 1266, 1277 (S.D.N. Y.1974). *See also Fluitt v. Superintendent, Green Haven Correctional Facility,* 480 F.Supp. 81, 85–86 (S.D.N.Y.1979) ("distress" at guilty plea did not require later hearing on voluntariness); *United States ex rel. Best v. Fay,* 239 F.Supp. 632, 634 (S.D.N.Y.1965), *aff'd,* 365 F.2d 832 (2d Cir. 1966), *cert. denied,* 386 U.S. 998, 87 S.Ct. 1319, 18 L.Ed.2d 347 (1967) ("nervous and

upset" defendant not entitled to hearing on whether plea was voluntary).

*People v. Harris,* 109 A.D.2d 351, 491 N.Y.S.2d 678 (1985), discusses at length the trial court's denial of the defendant's request for a hearing to determine competency to stand trial. The court noted that in determining whether a trial court denied due process in refusing a competency hearing, according to *Pate* and its progeny, the focus should be on what the trial court did in light of what it then knew of the defendant. 109 A.D.2d at 354–55, 491 N.Y.S.2d at 683. Upon examination of the trial transcript, the court found numerous instances of emotional courtroom outbursts, including instances where the defendant wept and a recess was called because it was not clear whether the defendant "was going to break down." 109 A.D.2d at 356, 491 N.Y. S.2d at 684. In addition, the defendant's attorney described her as "teetering on the brink," and her psychiatrist speculated that admission of a certain letter into evidence might precipitate suicidal depression. The New York court concluded:

Concededly, these incidents show that defendant was distressed by her situation and understandably overwrought. By the same token, however, they reveal that defendant was bearing up under a difficult situation.... In any event, by no stretch of the imagination could these isolated incidents be interpreted as evincing incapacity on defendant's part to consult with her lawyer with a reasonable degree of rational understanding and with a rational as well as factual understanding of the proceedings against her....

....

... Unlike the cases of *Pate, Drope, Lokos* [*v. Capps,* 625 F.2d 1258 (5th Cir. 1980)], and *Nathaniel* [*v. Estelle,* 493 F.2d 794 (5th Cir.1974)], there was no evidence before the Trial Judge that defendant had a prior history of irrational behavior or medical treatment. Moreover, to the extent that the information before the court revealed that defendant was experiencing difficulty, it did not suggest any impairment on defendant's

part to cooperate in her defense—unlike the Federal cases cited above.

109 A.D.2d at 356, 491 N.Y.S.2d at 684, 686.

In the present case, the defendant's emotional upset was an isolated incident at trial. No emotional problems had surfaced during the previous three days of the four-day trial. While the defendant had a prior history of mental illness, that occurred some years before this incident. At the time of trial, he was found to suffer only from mild to moderate depression. His testimony at trial was clear and coherent and presented an alternative explanation for his whereabouts and activities on the day of the alleged crime. No observable, objective facts such as a suicide attempt raised a reasonable doubt as to the defendant's competence. *See Drope,* 420 U.S. at 178–79, 95 S.Ct. at 906–07. The trial judge's statement did not indicate an inability to assist trial counsel. As we said in *State v. Lafferty,* 749 P.2d 1239, 1249 (Utah 1988), "[T]he relevant inquiry [under section 77–15–2] is whether [the defendant] had the *ability* to assist counsel, not whether he in fact chose to assist counsel or to comply with all of counsel's wishes." (Emphasis in original.)

In sum, the trial judge did not err in not holding a competency hearing.

### III. OTHER ASSERTED ERRORS

The defendant's second point on appeal is that the evidence was insufficient as a matter of law to convict him of two counts of aggravated sexual assault. To understand the defendant's arguments, the relevant statutes must be set out since the aggravated sexual assault convictions incorporated acts of forcible sodomy and forcible sexual abuse. Utah Code Ann. § 76–5–405 (Supp. 1986) defines aggravated sexual assault in the following manner:

(1) A person commits aggravated sexual assault if in the course of a rape or attempted rape, object rape or attempted object rape, forcible sodomy or attempted forcible sodomy, or forcible sexual abuse or attempted forcible sexual abuse:

(a) the actor causes bodily injury to the victim;

(b) the actor uses or threatens the victim by use of a deadly or dangerous weapon;

(c) the actor compels, or attempts to compel, the victim to submit to rape, object rape, forcible sodomy, or forcible sexual abuse, by threat of kidnapping, death, or serious bodily injury to be inflicted imminently on any person; or

(d) the actor is aided or abetted by one or more persons.

(2) Aggravated sexual assault is a felony of the first degree punishable by imprisonment in the state prison for a term which is a minimum mandatory term of 5, 10 or 15 years and which may be for life.

Section 76–5–403 describes the offense of sodomy:

(1) A person commits sodomy when the actor engages in any sexual act with a person who is 14 years of age or older involving the genitals of one person and mouth or anus of another person, regardless of the sex of either participant.

(2) A person commits forcible sodomy when the actor commits sodomy upon another without the other's consent.

(3) Sodomy is a class B misdemeanor. Forcible sodomy is a felony of the first degree.

Forcible sexual abuse is defined in § 76–5–404 as follows:

(1) A person commits forcible sexual abuse if the victim is 14 years of age or older and, under circumstances not amounting to rape, object rape, sodomy, or attempted rape or sodomy, the actor touches the anus, buttocks, or any part of the genitals of another, or touches the breast of a female, or otherwise takes indecent liberties with another, or causes another to take indecent liberties with the actor or another, with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any per-

son, without the consent of the other, regardless of the sex of any participant.

(2) Forcible sexual abuse is a felony of the second degree.

■ The defendant asserts that there is insufficient evidence that he touched Mrs. L.'s breast with the requisite intent to gratify a sexual desire and therefore there was insufficient evidence to support the aggravated sexual assault conviction based on the forcible sexual abuse allegation.

First, there is no merit to the contention that there is insufficient evidence to support the aggravated sexual assault conviction based on the forcible sexual abuse. With regard to that count, the trial court stated:

> I likewise find the defendant guilty of count five, aggravated sexual assault, a first degree felony regarding a forcible sexual abuse element in that charge. The defendant clearly touched the buttocks, and the anal area of the victim, [Mrs. L.], which is the elements. He likewise touched her breasts in the course of his activities, and *finally, the conduct in what the court finds to be an insertion of his finger into her anal opening all constitute forcible sexual abuse, which is the underlying element of the forcible sexual assault charge in count five.* I find him guilty of that, as I've indicated.

(Emphasis added.) Therefore, even if the defendant's contention that he lacked the requisite intent when he touched the victim's breasts was correct, the trial court found that several of the defendant's acts constituted forcible sexual abuse.

■ The defendant's next claim is that the single criminal episode doctrine will not allow conviction for both counts of aggravated sexual assault, one based on forcible sodomy and one based on forcible sexual abuse. Utah Code Ann. § 76–1–401 (1978), in relevant part, provides: "In this part unless the context requires a different definition, 'single criminal episode' means all conduct which is closely related in time and is incident to an attempt or an accomplishment of a single criminal objective." Utah Code Ann. § 76–1–402(1) (1978) provides:

(1) A defendant may be prosecuted in a single criminal action for all separate offenses arising out of a single criminal episode; however, when the same act of a defendant under a single criminal episode shall establish offenses which may be punished in different ways under different provisions of this code, the act shall be punishable under only one such provision; an acquittal or conviction and sentence under any such provision bars a prosecution under any other such provision.

The trial court ruled that the defendant's attempt to have anal intercourse with the victim amounted to forcible sodomy and that the defendant's insertion of a finger into the victim's rectum as well as other acts by the defendant amounted to forcible sexual abuse. The defendant argues that rubbing the anal area prior to digital or penile penetration is part of a "single criminal episode" and should constitute only one criminal offense because it is probably impossible to perform anal intercourse (forcible sodomy) without first rubbing the anal area (forcible sexual abuse).

The defendant's argument would have merit if one act could not have been committed without also necessarily committing the other. Section 76–1–402(1) provides that a defendant may be prosecuted for *all* offenses arising out of the same criminal episode, but may not be so prosecuted when such offenses are established by the "same act." In this case, the act of digital penetration preceded the penile contact and the former act was in no way necessary to the latter act. The two acts were not part of the "same act," and they can support two counts of aggravated sexual assault based on separate acts of forcible sexual abuse and forcible sodomy. *See also State v. O'Brien,* 721 P.2d 896 (Utah 1986); *State v. Porter,* 705 P.2d 1174 (Utah 1985); *State v. Suarez,* 736 P.2d 1040 (Utah Ct. App.1987).

■ Finally, the defendant contends that forcible sexual abuse is a lesser included offense of forcible sodomy because the latter cannot be committed without committing the former. His argument is that it is

impossible to perform anal intercourse or to attempt it without rubbing the anal area of the body, thereby committing forcible sexual abuse. The defendant contends that in this instance forcible sexual abuse is a lesser included offense of forcible sodomy, and since one of the convictions for aggravated sexual assault was based on forcible sexual abuse and one on forcible sodomy, he was in effect convicted twice for the same conduct.

A lesser included offense in Utah is defined as follows:

(3) A defendant may be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense. An offense is so included when:

(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(b) It constitutes an attempt, solicitation, conspiracy, or form of preparation to commit the offense charged or an offense otherwise included therein....

Utah Code Ann. § 76–1–402(3)(a), (b) (1978).

The trial court found that the defendant had committed forcible sexual abuse based on the touching of the victim's buttocks and anal area, the touching of her breasts, and the insertion of his finger into her anal opening. The forcible sodomy element of the other charge of aggravated sexual assault was based on the defendant's attempts at anal intercourse, even though there was no evidence of penetration.

Under § 76–1–402(3), if one charge is a lesser included offense of another charge, the defendant may be convicted of one or the other charge, but not both. Clearly, the evidence supports the forcible sodomy element of one of the aggravated sexual assault charges. This is because a touching of the anus, regardless of penetration, satisfies the "sexual act" requirement of the forcible sodomy statute, § 76–5–403. *See* Utah Code Ann. § 76–5–407(2) (Supp.

1987); [2] *State v. Glenny,* 656 P.2d 990 (Utah 1982).

The sole remaining question is whether forcible sexual abuse is a lesser included offense of forcible sodomy. To determine whether an offense is included in a charged offense in this context, the trial court must first decide whether the offense is established by proof of the same or fewer than all of the elements required to establish the commission of the offense charged. *State v. Velarde,* 734 P.2d 440 (Utah 1986); *State v. Baker,* 671 P.2d 152 (Utah 1983). In this case, forcible sexual abuse does not require proof of the same or less than all the facts required for forcible sodomy because several of the variations of forcible sexual abuse found by the trial court, such as touching the female breast or inserting a finger into the victim's anus, do not constitute elements under the forcible sodomy statute. *See State v. Hill,* 674 P.2d 96, 97 (Utah 1983).

Although a comparison of the statutory elements of these two crimes appears not to make forcible sexual abuse a lesser included offense of forcible sodomy, our inquiry does not end there. In *State v. Hill,* we explained that there is a secondary case-by-case test that must be satisfied to overturn a conviction on the basis that it is a lesser included offense of another conviction based on the same facts:

The secondary test is required by the circumstance that some crimes have multiple variations, so that a greater-lesser relationship exists between some variations of these crimes, but not between others. *E.g., State in Interest of L.G.W.,* Utah, 641 P.2d 127, 130–31 (1982) (forcible sexual abuse and lewdness). A theoretical comparison of the statutory elements of two crimes having multiple variations will be insufficient. In order to determine whether a defendant can be convicted and punished for two different crimes committed in connection with a single criminal episode, the court must consider the evidence to

---

**2.** Section 76–5–407(2) provides: "In any prosecution for unlawful sexual intercourse, rape, or sodomy, any sexual penetration or, *in the case* of sodomy, any touching, however slight, is sufficient to constitute the offense." (Emphasis added.)

determine whether the greater-lesser relationship exists between the specific variations of the crimes actually proved at trial.

674 P.2d at 97.

Even under the secondary test, the defendant was not convicted of both greater and lesser offenses. The forcible sexual abuse counts were based on the touching of the victim's breasts and on the digital penetration of the victim's rectum. Neither of these acts satisfies the elements of forcible sodomy. Therefore, in this case, the crime of forcible sexual abuse is not a lesser included offense of forcible sodomy.

Affirmed.

HALL, C.J., and DURHAM and ZIMMERMAN, JJ., concur.

HOWE, Associate C.J., concurs in the result.