**Donald W. YORK, Petitioner and Appellant,**

v.

**Kenneth V. SHULSEN, et al., Respondents and Appellees.**

No. 920378–CA.

Court of Appeals of Utah.

May 26, 1994.

Rehearing Denied June 20, 1994.

Jerold D. McPhee, Salt Lake City (argued), for appellant.

Marian Decker (argued), Christine F. Soltis, and Jan Graham, Salt Lake City, for appellees.

Before BILLINGS, DAVIS, and ORME, JJ.

## OPINION

BILLINGS, Presiding Judge:

Petitioner Donald W. York appeals from the denial of his petition for a writ of habeas corpus. We affirm.

## FACTS

■ When reviewing an appeal from a dismissal of a habeas corpus petition, " 'we survey the record in the light most favorable to the findings and judgment.' " *Bundy v. DeLand*, 763 P.2d 803, 805 (Utah 1988) (quoting *Velasquez v. Pratt*, 21 Utah 2d 229, 232, 443 P.2d 1020, 1022 (1968)). We recite the facts accordingly. On June 17, 1984, petitioner purchased with cash an airline ticket to fly from California to Salt Lake City under the name of Dan Hill. After arriving in Salt Lake City later that day, he rented a car using the name Donald York and drove directly to the home of his ex-wife, Patricia York. Petitioner entered his ex-wife's home armed with a loaded gun, went to her bedroom and fired twelve to fourteen times, seriously wounding her and killing Jeff Longhurst.

After the shootings, petitioner surrendered himself to the Bountiful police. He told officers that there had been a fight at Patricia York's residence and asked whether his ex-wife and Longhurst were alive. He also told the police where to find the gun and shells, and that for what he had done he was going to hell and could no longer be a member of his church.

Petitioner was charged with first degree murder, a capital offense, in violation of Utah Code Ann. § 76–5–202 (1984), attempted second degree murder, a second degree felony, in violation of Utah Code Ann. §§ 76–5–203 (1979) and 76–4–102 (1983), and aggravated burglary, a first degree felony, in violation of Utah Code Ann. § 76–6–203 (1973).[1] Petitioner pled not guilty.

Thereafter, petitioner tendered a notice of defense claiming that he was not guilty by reason of insanity or that he had diminished mental capacity at the time the offense occurred under Utah Code Ann. § 77–14–3

(1990). As a consequence, the court appointed Dr. Chris Ghicadus, M.D. and Dr. Heber C. Kimball, Ph.D., of the Davis County Mental Health Center, "to examine the defendant and investigate his mental condition."

Dr. Ghicadus examined defendant and concluded that he was "mentally competent to understand trial proceedings and would be able to assist in his defense." Further, he diagnosed petitioner as having borderline personality disorder, meaning that petitioner was "not 'insane' in a legal sense of the word, is not psychotic in a psychiatric sense, but has variances and neurotic traits that do not seriously interfere with [his] everyday life."

Similarly, Dr. Kimball concluded that "there is no medical history or evidence of any fugue or dissociative states which would have reduced his capacity to control his impulses at the time of the alleged crime," and that "[h]e shows no signs of any psychoses, illogical thinking, delusions or hallucinations. His train of thought appears to be normal." Both doctors suggested further testing in order to state firmly why petitioner had periods of memory lapse.

Pursuant to a plea bargain, petitioner pled guilty to reduced charges of second degree murder, a first degree felony, in violation of Utah Code Ann. § 76–5–203 (1979), and attempted manslaughter, a third degree felony, in violation of Utah Code Ann. § 76–5–205 (1985). At the plea hearing, petitioner claimed he had no specific memory of the shootings; however, he indicated that nevertheless he desired to accept the plea agreement and plead guilty to both shootings. The trial court accepted his plea without formally inquiring into his competency, finding he "knowingly entered his plea of guilty" to both counts.

At the sentencing hearing, defense counsel requested a ninety-day diagnostic evaluation to investigate the "possibility that can't be discounted, that Mr. York does have some ... medically discoverable and treatable brain injury." Prior to sentencing, the court asked if there was any known reason why sentence should not be imposed, to which defense counsel responded negatively. With-

---

1. The burglary charge was subsequently dis-    missed.

out inquiring into his competency, the court then sentenced petitioner to five years to life for the first offense and to zero to five years for the second offense, to be served consecutively at the Utah State Prison.

At the Prison, petitioner was examined and treated by Dr. Alma Carlisle, Ph.D., the prison psychologist. Dr. Carlisle conducted several hypnosis/therapy sessions with petitioner in 1985 and ultimately diagnosed him as having multiple personality disorder (MPD). His other personality was identified as Dan Hell.[2]

As a result of the MPD diagnosis, petitioner filed a petition for a writ of habeas corpus on April 2, 1985. Petitioner did not move to withdraw his guilty plea or otherwise directly appeal his conviction. In February 1990, the trial court granted petitioner's motion for the appointment of a psychiatric expert to evaluate petitioner's "mental condition at the time his plea was entered," and appointed Dr. Alan E. Jeppsen, M.D., to evaluate him in preparation for a hearing on the habeas corpus petition.

An evidentiary hearing on the petition was held on July 3, 1991, at which petitioner, Dr. Carlisle, and Dr. Jeppsen testified. Petitioner claimed that he could not recall the details of the shootings or the entry of his guilty pleas. He further testified that he pled guilty on the advice of counsel with the understanding that this was the only way he could get treatment for his alleged amnesia. Dr. Carlisle testified that although petitioner probably suffered from MPD at the time of the shootings and his plea, he was nevertheless competent to have pled guilty. Dr. Carlisle explained that petitioner would have been able to think rationally, form a mental state of intent to kill, understand the nature of the proceedings and the nature of the crimes, and assist his attorney. Thus, he concluded that petitioner was competent to enter a guilty plea to the shootings. Dr. Jeppsen agreed with Dr. Carlisle's diagnosis of MPD; however, he testified that petitioner would not have been competent to plead guilty because of this psychiatric disorder.

The court denied the petition for a writ of habeas corpus, finding that although petitioner suffered from MPD at the time of the crimes and his plea, he was competent to plead guilty. Petitioner appeals the court's denial, arguing: (1) the trial court should have made a finding regarding his competency before accepting his change of plea to guilty; and (2) the habeas court erred in finding he was competent when he entered his guilty plea.

■ "[T]o successfully attack a guilty plea collaterally, a petitioner must demonstrate an obvious injustice or a substantial and prejudicial denial of a constitutional right in the reception of the plea and must show cause why he or she took no direct appeal." *Summers v. Cook*, 759 P.2d 341, 343 (Utah App. 1988); *accord Salazar v. Warden*, 852 P.2d 988, 991 (Utah 1993). Petitioner did not directly appeal his conviction because the time for appeal had lapsed by the time he was diagnosed with MPD, and the State does not contend that as a result we should refuse to hear his petition. We further note that petitioner was not required to bring a motion to withdraw his guilty plea before filing a petition for habeas corpus. *See Lancaster v. Cook*, 753 P.2d 505, 506 (Utah 1988) (per curiam). Thus, our review is appropriate.

In reviewing appeals from a dismissal of a petition for a writ of habeas corpus, the trial court's conclusions of law are reviewed for correctness. However, in reviewing findings of fact "we survey the record in the light most favorable to the findings and judgment; and we will not reverse if there is a reasonable basis therein to support the trial court's refusal to be convinced that the writ should be granted." *Butterfield v. Cook*, 817 P.2d 333, 336 (Utah App.) (citation omitted) (quoting *Medina v. Cook*, 779 P.2d 658, 658 (Utah 1989)), *cert. denied*, 826 P.2d 651 (Utah 1991).

## I. FAILURE TO DETERMINE PETITIONER'S COMPETENCY BEFORE ACCEPTING GUILTY PLEA

### A. Preservation of Issue for Appeal

■ The State asserts as a threshold matter that the majority of theories upon

---

**2.** Petitioner's airline ticket to Salt Lake City on the day of the shootings is recorded under the name of Dan Hill. Presumably this is a misspelling of Dan Hell.

which petitioner relies in arguing that the trial court should have made a finding of competency before accepting his change of plea to guilty were not presented to the habeas court, and thus they have not been preserved for appellate review. This court will not consider issues raised for the first time on appeal absent plain error or exceptional circumstances. *State v. Brown*, 856 P.2d 358, 359 (Utah App.1993); *accord State v. Mabe*, 864 P.2d 890, 892–93 n. 6 (Utah 1993). An issue is preserved for appeal when "a party ... timely bring[s] the issue to the attention of the trial court, thus providing the court an opportunity to rule on the issue's merits." *LeBaron & Assoc., Inc. v. Rebel Enter., Inc.*, 823 P.2d 479, 482–83 (Utah App.1991).

■ We conclude the issue of whether the plea-taking court should have made a competency inquiry before accepting petitioner's guilty plea was properly preserved for appeal. Although all of the legal arguments developed on appeal may not have been articulated below, the underlying issue was clearly before the habeas court, as were the facts upon which petitioner now relies on appeal. This issue was sufficiently brought to the habeas court's attention through petitioner's second amended petition and the evidence contained in the record.

### B. Finding of Competency

Petitioner argues the original trial court erred in failing to investigate whether he was competent to enter a guilty plea. He claims that his previous plea of not guilty, combined with his notice of intent to offer a defense of insanity and his inability to remember the shootings, should have alerted the trial court that there were questions regarding his competency. The State counters that petitioner

at no time alleged he was incompetent to enter a guilty plea.

■ Due process requires that a defendant be competent to plead guilty. *Drope v. Missouri*, 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 385, 86 S.Ct. 836, 842, 15 L.Ed.2d 815 (1966). "A mentally incompetent defendant can provide no defense, and proceedings against such a defendant do not comport with due process." *State v. Young*, 780 P.2d 1233, 1236 (Utah 1989). Additionally, in order to protect a defendant's due process rights, a guilty plea must be voluntarily and knowingly made. *See State v. Gibbons*, 740 P.2d 1309, 1312 (Utah 1987); *State v. Stilling*, 856 P.2d 666, 671 (Utah App.1993).

■ The test for competency to plead guilty is the same as competency to stand trial: "whether the defendant has 'sufficient present ability to consult with his [or her] lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him [or her].'" *Godinez v. Moran*, — U.S. —, —, 113 S.Ct. 2680, 2685, 125 L.Ed.2d 321 (1993) (quoting *Dusky v. United States*, 362 U.S. 402, 403, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960) (per curiam)).[3]

Courts have variously described the level of doubt regarding a defendant's competency that is required before the judge must make a sua sponte competency determination.[4] However, courts have generally found that due process requires a court to sua sponte determine competency before taking a guilty plea when there is substantial evidence of incompetence such that a reasonable judge would have a bona fide doubt as to the defendant's competence. *See United States v. Lewis*, 991 F.2d 524, 527 n. 4 (9th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 216, 126

---

3. Prior to *Godinez*, the question of whether the standard for determining competency to plead guilty was higher than the standard for determining competency to stand trial divided both state and federal courts. *Compare Chavez v. United States*, 656 F.2d 512, 518–19 (9th Cir.1981) (applying more stringent standard for determining competency to enter guilty plea than to stand trial) *with Chichakly v. United States*, 926 F.2d 624, 633–35 (7th Cir.1991) (determining competency standard for pleading guilty is identical to

competency standard for standing trial) *and Shaw v. Martin*, 733 F.2d 304, 314 (4th Cir.), *cert. denied*, 469 U.S. 873, 105 S.Ct. 230, 83 L.Ed.2d 159 (1984) (same).

4. Significantly, however, these terms have been found to describe the same constitutional standard. *United States v. Lewis*, 991 F.2d 524, 527 n. 4 (9th Cir.1993); *Chavez*, 656 F.2d at 516 n. 1.

L.Ed.2d 172 (1993); *United States v. Johns,* 728 F.2d 953, 956 (7th Cir.1984); *Chavez v. United States,* 656 F.2d 512, 516 n. 1 (9th Cir.1981); *People v. Thomas,* 246 Ill.App.3d 708, 186 Ill.Dec. 505, 507, 616 N.E.2d 695, 697 (1993); *Berndt v. State,* 733 S.W.2d 119, 122 (Tenn.Crim.App.1987).

Two Utah cases have addressed the level of doubt necessitating a competency determination under circumstances somewhat similar to this appeal. Most recently, in *State v. Young,* 780 P.2d 1233 (Utah 1989), the defendant filed a notice prior to trial that he would rely on the defense of diminished capacity, and two alienists were appointed to examine him. *Id.* at 1235. One doctor testified that the defendant had a mental illness that consisted of mild to moderate depression, alcohol abuse, mixed drug disorder, and attention deficit disorder. The second doctor testified that the defendant did not suffer from any mental illness and diagnosed him as having only an antisocial personality disorder. At trial, the defendant testified that he had no recollection of the encounter with the victim. *Id.*

During the fourth day of trial, defense counsel moved to allow the defendant to plead guilty and mentally ill. The defendant stated he wanted to "get it over with." *Id.* The trial judge, noting the defendant's obvious state of emotional distress, concluded that the defendant's request was not made in a wholly deliberate and knowing manner and thus refused to allow petitioner to plead guilty. The defendant was subsequently found guilty.

On appeal, the defendant argued that he should have been given a hearing on his competence to stand trial, claiming the judge rejected his plea because he was incompetent. *Id.* at 1235–36. The *Young* court stated: "It is well established that '[a]n allegation of "nervous difficulties" does not raise a *bona fide doubt as to competency.*'" *Id.* at 1237 (emphasis added) (quoting *People v. Wilson,* 28 Ill.App.3d 229, 327 N.E.2d 502, 503 (1975)). The court found on appeal that the trial judge did not err in not holding a competency hearing because no objective facts "raised a *reasonable doubt* as to the defendant's competence." *Id.* at 1238 (emphasis added).

Similarly, in *State v. Bailey,* 712 P.2d 281 (Utah 1985), the supreme court considered a defendant's competence to stand trial. The defendant in *Bailey* had been in the prison hospital, and the prison psychiatrist found him not competent to stand trial; however, two other doctors later determined he was competent to stand trial. *Id.* at 282. The trial court did not hold a hearing on his competency to stand trial, nor did defense counsel petition for such a hearing. *Id.* The *Bailey* court held that the defendant was not entitled to a competency hearing when his most recent psychiatric evaluations indicated he was competent and he filed no petition. *Id.* at 285.

■ In determining whether a trial court should have had doubts as to competency, an appellate court may consider only those facts that were before the court when the plea was entered. *See Lewis,* 991 F.2d at 527; *Williams v. Bordenkircher,* 696 F.2d 464, 467 (6th Cir.), *cert. denied,* 461 U.S. 916, 103 S.Ct. 1898, 77 L.Ed.2d 287 (1983); *Berndt,* 733 S.W.2d at 122. Thus, we must determine whether the information known to the trial court at the time of petitioner's plea hearing should have raised a bona fide doubt regarding his competency.

■ At the plea hearing, the court had an extended dialogue with defendant, which included:

MR. DIUMENTI [defense counsel]: ... Mr. York desires to enter a plea of guilty.

. . . .

Do you have any questions, Don, about what your prerogatives are and what your rights are?

MR. YORK: No. The only thing I ask, Your Honor, is that since I have no memory of it, I ask that before you sentence me, that you send me down for evaluation.

THE COURT: That will go a little later, let me first ask you, Mr. McGuire [counsel for the State]. . . .

. . . .

THE COURT: Now, are you under the influence of any drugs or alcohol at this time?

MR. YORK: No, Your Honor.

THE COURT: Are you being treated for any mental illness?

MR. YORK: No, Your Honor.

THE COURT: You are receiving no medications in that regard?

MR. YORK: No, Your Honor.

THE COURT: Are you satisfied with the counsel that you have received from Mr. Diumenti in this matter?

MR. YORK: Very much so, yes.

THE COURT: You have gone over it thoroughly with him?

MR. YORK: Yes, Your Honor, I have.

. . . .

THE COURT: Now, are you willing to plead guilty because you are in fact guilty?

MR. DIUMENTI: Your Honor, if I might, as far as Count II is concerned, I believe that's a fair statement and I believe Mr. York will answer in the affirmative.

As far as Count I is concerned, Your Honor has seen both the psychiatric and the psychological ... unfortunately the blackout periods that they have talked about deal with Mr. Longhurst. Don has, number one, reviewed all of the evidence and the testimony and I, the only reason I interject at this point in time is I know he's going to tell the Court that ... that's the way it looked but objectively he can't say yes.

I told him also, however, and advised him, that it is valid for a person not recalling, [f]or any of several reasons, the exact facts of an event to enter a plea of guilty attendant a negotiated settlement so they do not unnecessarily, and in addition I believe unwisely subjects themselves to the potential of being convicted of a more serious crime.

And to it I might, Don, do you understand what the Judge said as far as Count II?

MR. YORK: Yes, sir.

MR. DIUMENTI: Are you entering a plea of guilty on your belief that you in fact engaged in conduct that is described in that act?

MR. YORK: Yes.

MR. DIUMENTI: As far as Count I.

THE COURT: Well, let the Court ask you then, Mr. York, as far as Count I. That requires that you be proved beyond a reasonable doubt to have intentionally or knowingly caused the death of Jeff Longhurst. And are you willing to enter a plea of guilty to that charge?

MR. YORK: To get this over with, I will do that, Your Honor.

THE COURT: You realize that by so doing, as far as this Court is concerned, you have admitted that particular charge?

MR. YORK: Yes, Your Honor.

THE COURT: And that you have waived all those rights which I have explained to you previously in connection with that particular charge?

MR. YORK: I'm fully aware.

The transcript of this hearing lacks any statement or occurrence indicating that petitioner was acting other than in an entirely rational manner. Petitioner answered all questions directed to him without any apparent hesitation or lack of comprehension.

Furthermore, the evaluations of Drs. Ghicadus and Kimball, which were available to the court, do not raise a reasonable doubt as to petitioner's competency. Both examiners diagnosed him as suffering from borderline personality disorder, but neither evaluation indicated that he was not competent to plead guilty. In fact, both examinations showed petitioner to be without psychoses or serious mental problems. In his psychiatric evaluation, Dr. Kimball stated that petitioner "shows no signs of any psychoses, illogical thinking, delusions or hallucinations. His train of thought appears to be normal."

Similarly, Dr. Ghicadus summarized:

There is further nil evidence of a psychosis or other mental problem that would make him so seriously unstable as to not be able to make a decision about his behavior. It is therefore, *my conclusion that the person is mentally competent to understand trial*

*proceedings and would be able to assist in his defense.* (Emphasis added).

Thus, there was pre-plea evidence of competency. *See Johnson v. United States,* 633 A.2d 828, 832 (D.C.1993) (holding in context of motion to withdraw guilty plea, competency hearing "not required if there is a pre-plea determination of competence based on a psychiatric evaluation").

■ The evidence petitioner contends shows his entitlement to a competency hearing at the time he pled guilty is his previous notice of intent to raise the defense of insanity and his communicated lack of memory of the shootings. However, the mere filing of notice to rely on the defense of insanity is not sufficient to require a competency hearing before accepting a guilty plea. *See In re Hanson,* 623 A.2d 466 (Vt.1993) (finding prior successful insanity plea did not require court to inquire into defendant's competency).

■ Furthermore, a defendant with amnesia is not per se incompetent to plead guilty. *State v. Owens,* 248 Kan. 273, 807 P.2d 101, 106–07 (1991); *accord Thomas,* 616 N.E.2d at 698. A defendant may plead guilty although he or she has no recollection of the incident for which he or she is charged. *Commonwealth v. Hubbard,* 371 Mass. 160, 355 N.E.2d 469, 475 (1976); *State v. Fisher,* 292 Minn. 453, 193 N.W.2d 819, 820 (1972) (per curiam); *People v. Francabandera,* 33 N.Y.2d 429, 354 N.Y.S.2d 609, 614–15, 310 N.E.2d 292, 296 (1974). Whether amnesia renders a defendant incompetent is evaluated on a case-by-case basis. *Owens,* 807 P.2d at 106. In taking a guilty plea under such circumstances, courts look to the fairness of the proceeding as affected by the defendant's amnesia. A defendant cannot plead guilty if the fairness of the proceeding is compromised. *Id.; People v. Douglas,* 139 Misc.2d 241, 527 N.Y.S.2d 151, 153 (N.Y.Sup. 1988) (finding trial court could accept defendant's guilty plea as voluntary and intelligent, despite genuine lack of recall due to traumatic amnesia).

Based on the facts of this case, we cannot say the trial court erred in concluding defendant was able to enter a knowing guilty plea, despite his alleged inability to remember the shootings. In sum, the information known to the trial court at the time of the plea hearing does not indicate that it should have had a bona fide reasonable doubt with respect to petitioner's competency to plead guilty.

## II. HABEAS COURT'S FINDING OF COMPETENCY

Petitioner next contends that the habeas court erred by finding he was competent at the time he entered his guilty plea. The State responds that petitioner has failed to meet his burden to marshal the evidence and additionally that even if he is able to overcome the marshaling requirement, the habeas court properly determined he was competent to plead guilty.

■ Competency is a factual issue, reviewed under Rule 52(a) of the Utah Rules of Civil Procedure. *State v. Drobel,* 815 P.2d 724, 734 (Utah App.), *cert. denied,* 836 P.2d 1383 (Utah 1991); *accord Lafferty v. Cook,* 949 F.2d 1546, 1549 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1942, 118 L.Ed.2d 548 (1992);[5] *State v. Lafferty,* 749 P.2d 1239, 1243–44 (Utah 1988). Rule 52(a) provides: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Utah R.Civ.P. 52(a). "A finding attacked as lacking adequate evidentiary support is deemed 'clearly erroneous' only if we conclude that the finding is against the clear weight of the evidence." *Reid v. Mutual of Omaha Ins. Co.,* 776 P.2d 896, 899–900 (Utah 1989). We review the evidence in a light most favorable to the trial court's findings and affirm if there is a reasonable basis for doing so. *Gillmor v. Gillmor,* 745 P.2d 461, 462 (Utah App.1987), *cert. denied,* 765 P.2d 1278 (Utah 1988). It is petitioner's burden to show the judgment was clearly erroneous.

**5.** The Tenth Circuit stated: "[C]ompetency is a factual issue subject to the presumption of correctness." *Lafferty v. Cook,* 949 F.2d at 1549. However, the presumption of correctness is not irrebuttable; "[t]he threshold question is whether the competency determination is fairly supported by the record." *Id.* at n. 1.

598

*Stewart v. State*, 830 P.2d 306, 308 (Utah App.1992).

As a prerequisite to an attack on findings of fact, the petitioner must marshal all evidence in support of the findings and demonstrate "that the evidence, including all reasonable inferences drawn therefrom, is insufficient to support the findings." *Grayson Roper Ltd. v. Finlinson*, 782 P.2d 467, 470 (Utah 1989); *see West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1315 (Utah App.1991) (discussing in detail what "onerous" marshaling burden entails for appellants). This marshaling requirement provides the appellate court the basis from which to conduct a meaningful and expedient review of facts challenged on appeal. *See Wright v. Westside Nursery*, 787 P.2d 508, 512 n. 2 (Utah App.1990).

In the present case, petitioner does not meet his marshaling burden; rather, he merely reargues the evidence most favorable to him, leaving it to this court to sort out what evidence actually supports the habeas court's competency determination. Because he has failed to meet this burden, we decline to consider the merits of his argument on appeal. *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 800 (Utah 1991).[6]

## CONCLUSION

The information known to the trial court at the time of the plea hearing does not indicate that the trial judge should have had a bona fide doubt with respect to petitioner's competency to plead guilty. Furthermore, we refuse to consider petitioner's claim that the trial court erred in finding him competent at the time he entered his guilty plea because

he has failed to meet his burden to marshal the evidence. Nevertheless, there is an adequate evidentiary foundation for the habeas court's determination that petitioner was competent at the time he entered his guilty pleas. Accordingly, we affirm the trial court's denial of petitioner's habeas corpus petition.

DAVIS, J., and ORME, Associate P.J., concur.

---

6. However, our review of the record suggests the likelihood that sufficient evidence supports the habeas court's finding that petitioner was competent at the time he entered his guilty plea. Dr. Carlisle testified that although petitioner probably suffered from MPD at the time of the shootings, he was nevertheless competent to have pled guilty. He further testified that petitioner would have been able to think rationally, form a mental state of intent to kill, understand the nature of the proceedings and the nature of the crime, comprehend the reasons for punishment, and assist his attorney. Dr. Carlisle explained that petitioner "would have the rational thought of determining whether or not [pleading guilty] was the choice he wanted to make at the time." Dr. Carlisle also testified that if the host personality had really been unaware of what the alternate personality had done, he would have expected more confusion and inability to remember in petitioner's statements at the police station, and that it was possible petitioner was blocking his memory. Furthermore, the trial court's findings and conclusions clearly indicate the court applied the appropriate legal standard in finding petitioner competent to plead guilty, as required by *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam) and Utah Code Ann. § 77–15–2 (1993).