2001 UT 17

**Chess JACOBS, Petitioner and Appellant,**

v.

**STATE of Utah, Respondent and Appellee.**

No. 990763.

Supreme Court of Utah.

Feb. 23, 2001.

Brad C. Smith, Ogden for petitioner.

Mark L. Shurtleff, Att'y Gen., Catherine M. Johnson, Karen Klucznik, Asst. Att'ys Gen., Salt Lake City, for respondent.

DURRANT, Justice:

¶ 1 Chess Jacobs pleaded guilty to one count of rape of a child, a first degree felony, in 1984. Due to the aggravating circumstances of the case, Jacobs was sentenced to a term of fifteen years to life in the Utah State Prison. Ten years later, he filed a petition for extraordinary relief under rule 65B(b) of the Utah rules of Civil Procedure,[1] alleging that he was incompetent to plead guilty in 1984. He contended (1) the trial

court erred in not ordering, sua sponte, a competency hearing, and (2) his counsel was ineffective in allowing him to plead guilty without a competency hearing. The post-conviction court denied the petition, and Jacobs appeals. We affirm.

## BACKGROUND

¶ 2 Jacobs was charged with two counts of rape of a child, two counts of sexual abuse of a child, one count of sodomy upon a child, one count of aggravated sexual assault, and one count of aggravated burglary on February 28, 1984. The State contended that Jacobs broke into the fourteen year old victim's house and raped, sodomized, and sexually assaulted her at knifepoint over a three hour period. Jacobs pleaded not guilty to each of the charges.

¶ 3 Following the entry of Jacobs's plea, he was sent to the Weber County Jail. While there, he allegedly swallowed at least one razor blade and, in a separate incident, lit his hair on fire, burning the top of his forehead and his scalp. In light of this behavior, prison employees concluded Jacobs "need[ed] some sort of hospital commitment," and so the trial court held a hearing on the issue on March 28, 1984. During the hearing, Jacobs's attorney requested that he "immediately be sent somewhere for observation." Due to the expense involved in hospitalizing a prisoner, the State requested that Jacobs first be examined by alienists. The court agreed. That same day, Jacobs's counsel filed a notice of proposed defense of insanity.

¶ 4 The court appointed Drs. Ruth Brown and Harvey Wheelwright to examine Jacobs and submit written reports on his mental condition. Further, the court requested that the alienists be prepared to testify on the following points:

1. Did the defendant, at the time of the alleged offense, as a result of mental disease or defect, lack substantial capacity to:

   a) appreciate the wrongfulness of his conduct; or

1. In 1996, rule 65B(b) was renumbered and is currently designated as rule 65C of the Utah Rules of Civil Procedure.

b) conform his conduct to the requirements of the law[?]

2. Did the defendant, at the time of the alleged offense, as a result of mental disease or defect, lack the mental state required as an element of the offense charged?

3. Is the defendant able to[:]

a) comprehend the nature of the proceeding against him;

b) comprehend the punishment specified for the offense charged;

c) assist his counsel in his defense[?]

¶ 5 Following her interview with Jacobs, Dr. Brown submitted a report to the trial court. She determined that Jacobs was "oriented to time, place and person;" suffered from personality disorders, depression, psychotic episodes, and suicidal behaviors; and should be "hospitalized ... for safety and liability reason[s]." Nevertheless, she concluded that, at the time of the alleged offense, Jacobs could "appreciate the wrongfulness of his conduct" and "conform his conduct to the requirements of the law." She further concluded that Jacobs did not "lack the mental state required as an element of the offense charged" and was able to "comprehend the nature of the proceeding against him," "comprehend the punishment specified for the offense charged," and "assist his counsel in his defense."

¶ 6 Dr. Wheelwright also examined Jacobs and submitted his report to the trial court. Like Dr. Brown, he found Jacobs was oriented to time, place, and person. Dr. Wheelwright determined that Jacobs suffered from chronic paranoid schizophrenia and, at the time of the offense, had "diminished ability to control his behavior." Yet, the report also concluded that Jacobs understood the charge against him and was capable of assisting counsel in his defense. Further, Dr. Wheelwright stated that Jacobs was aware of the wrongful nature of the alleged offense both at the time the offense occurred and at the time of the examination.

¶ 7 The court also received the report of a third alienist, Steven L. Watson, a clinical social worker at the Weber Mental Health Center. Watson, like the other alienists, found that Jacobs was oriented as to time, place, and person. Watson concluded that Jacobs was "actively psychotic," but noted that Jacobs could be "deliberately manipulating" him. Watson determined that Jacobs should be hospitalized as his condition could worsen. If it did so, Watson reported, Jacobs could "*become* legally incompetent for trial." (Emphasis added.)

¶ 8 By April 6, 1984, the court had received the alienists' written reports. That day, it held a hearing "concerning the mental state of the defendant, to determine ... whether [it could] schedule the case for trial." Jacobs's counsel argued that the reports were inconsistent as they concluded that Jacobs was psychotic and yet still competent to stand trial. The court disagreed, however, stating that "it is conceivable somebody can be mentally ill and still be totally aware of his surroundings, where he is, what time it is, what country he is in, and help his counsel with the defense." Accordingly, in Jacobs's case, while the alienists evinced concern over Jacobs's mental health, "all three [concluded he could] assist his counsel in this defense, and he [was] competent to stand trial." Therefore, the court ordered a date be set for trial.

¶ 9 The court did recognize Jacobs's right to examine the alienists based on their reports before trial. However, before trial, and before any competency hearing was held at which Jacobs could examine the alienists, Jacobs pleaded guilty to one count of rape of a child. Following a mitigation/aggravation hearing, Jacobs was sentenced to a term of fifteen years to life.

¶ 10 Over ten years later, Jacobs filed, pro se, a petition for extraordinary relief in which he asserted that, at the time he pleaded guilty, he was not mentally competent to do so. The post-conviction court appointed counsel to represent Jacobs, who then amended the petition for extraordinary relief in a "First Amended Complaint." As amended, Jacobs's petition alleged (1) the trial court erred in failing to hold a competency hearing sua sponte and (2) Jacobs's counsel was ineffective in allowing him to plead guilty prior to examining the alienists in a competency hearing. In support of his petition,

Jacobs filed an affidavit from Dr. Roger Pray of the Utah State Board of Pardons, which stated that, in Dr. Pray's opinion, Jacobs was not competent to stand trial in 1984.

¶ 11 The State moved for summary judgment. The post-conviction court granted this motion, in part, dismissing Jacobs's claim that the trial court erred in failing to hold a competency hearing sua sponte. The post-conviction court then convened an evidentiary hearing, at which Dr. Pray testified. Following the hearing, the court dismissed Jacobs's remaining claim of ineffective assistance of counsel. Jacobs appeals.

## DISCUSSION

### I. JACOBS'S CLAIM OF TRIAL COURT ERROR

¶ 12 "A mentally incompetent defendant can provide no defense, and proceedings against such a defendant do not comport with due process." *State v. Young*, 780 P.2d 1233, 1236 (Utah 1989) (citing *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). "In determining whether a defendant is competent to plead guilty, the trial court must consider 'whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as a factual understanding of the proceedings against him.'" *State v. Holland*, 921 P.2d 430, 433 (Utah 1996) (further quotations omitted) (quoting *Godinez v. Moran*, 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993)).[2] In this case, the trial court determined that Jacobs was competent to stand trial based on the three alienists' reports and not a competency hearing. Jacobs contends that this was error, and, therefore, that the post-conviction court erred in

2. This standard is similar to the statutory standard for competency in the Utah Code at the time of Jacobs's trial:

> For the purposes of this chapter, a person is incompetent to proceed if he is suffering from a mental disease or defect resulting either:
> (1) In his inability to comprehend the nature of the proceedings against him or the punishment specified for the offense charged; or
> (2) In his inability to assist his counsel in his defense.

finding that the trial court did not violate his right to due process by failing to hold a competency hearing sua sponte.

¶ 13 A trial court must hold a competency hearing when there is "a 'substantial question of possible doubt' as to a defendant's competency at the time of the guilty plea." *Id.* at 435 (quoting *Commonwealth v. Hill*, 375 Mass. 50, 375 N.E.2d 1168, 1175 (1978)). The issue thus becomes whether there was a "substantial question of possible doubt" as to Jacobs's competency when he pleaded guilty.

¶ 14 Jacobs first contends that the reports of the three alienists, his history of mental illness, and his behavior while confined in the Weber County Jail raised a "substantial question of possible doubt" as to his competency to plead guilty. In so arguing, he relies on *Holland*. In that case, Holland pleaded guilty to first degree murder and was sentenced to death. Holland later moved to vacate his guilty plea on the basis of incompetency. The trial court denied his motion, although the findings of the four experts who evaluated Holland were in conflict as to his competency. Holland appealed. In light of the conflict between the experts, this court found there was a "substantial question of possible doubt" as to Holland's competency and reversed the trial court. *Id.* at 434–35.

¶ 15 The State contends *Holland* is inapposite, arguing this case is more like *State v. Bailey*, 712 P.2d 281 (Utah 1985). Bailey had a history of mental illness. After his arrest on burglary, theft, and habitual criminal charges, Bailey's "behavior was irrational and disoriented," and Dr. Austin, a prison psychiatrist, concluded he was incompetent to stand trial.[3] *Id.* at 282. The trial court

Utah Code Ann. § 77–15–2 (1982). Jacobs does not argue error under this statutory standard, relying instead on the due process standard set forth by the United States Supreme Court in *Godinez*.

3. The same standard applies to both a determination of competency to plead guilty and a determination of competency to stand trial. *Compare Holland*, 921 P.2d at 433 (guilty plea), *with Young*, 780 P.2d at 1236 (stand trial); *see also York v. Shulsen*, 875 P.2d 590, 594 (Utah Ct.App.

then ordered Dr. Moench and Dr. Austin, two alienists, to examine Bailey. The alienists' reports conflicted. This time, Dr. Austin found Bailey competent, and Dr. Moench found him incompetent. Therefore, the court ordered Dr. Moench and a third alienist to reexamine Bailey. Both found him competent to stand trial, and he was then tried. Following his conviction, Bailey appealed, alleging the trial court had erred in not holding a competency hearing. This court held that the evidence did not mandate a hearing on the issue of competency as the most recent examinations found him competent to stand trial. *See id.* at 285.

¶ 16 We hold that *Bailey* controls this case. Indeed, *Bailey* presented a closer question than this case. Unlike *Bailey,* here none of the alienists asserted that Jacobs was incompetent, although they had grave concerns as to his mental health. While Jacobs's behavior while in custody was "bizarre at best," as his counsel describes it, this is not determinative:

> Fitness to stand trial is a much narrower concept than moral or social wellness, and thus the fact that a defendant is twisted and disturbed does not necessarily mean he is unfit for trial. The fact that a person is mentally ill, displays bizarre, volatile, and irrational behavior, or has a history of mental illness, does not mean that he or she is incompetent to stand trial. A defendant may be fit for trial even though his mind is otherwise unsound.

21 Am.Jur.2d *Criminal Law* § 97 (1998) (footnotes omitted). In light of the fact that none of the alienists found Jacobs incompetent to stand trial, we cannot say that there was a "substantial question of possible doubt" as to his competency that would require the trial court to hold a competency hearing sua sponte.

¶ 17 Jacobs next contends that there was a "substantial question of possible doubt" as to his competency based on the filing of a notice of proposed defense of insanity. We disagree. As the court of appeals has correctly stated, "the mere filing of

notice to rely on the defense of insanity is not sufficient to require a competency hearing before accepting a guilty plea." *York v. Shulsen,* 875 P.2d 590, 597 (Utah Ct.App. 1994) (citing *In re Hanson,* 160 Vt. 111, 623 A.2d 466, 467–68 (1993)); *see also State v. Williams,* 154 Vt. 76, 574 A.2d 1264, 1265–66 (1990) (upholding trial court's decision to not hold a competency hearing after the defendant filed a notice to raise an insanity defense but then waived the competency hearing).

¶ 18 Finally, Jacobs argues that there was a "substantial question of possible doubt" as to his competency based on the report of Dr. Pray. In 1995, Dr. Pray submitted an affidavit to the post-conviction court in which he concluded as follows:

> Jacobs sufferd [sic] from [multiple personality disorder] for a period of time before the alleged crime was committed, throughout his incarceration at the Weber County Jail in 1984, throughout sentencing and while imprisioned [sic], through January in 1984. In my opinion, this disorder prevented Mr. Jacobs from understanding the nature and purpose of the legal process in which he was involved and prevented him from being able to assist, in any meaningful sense, his defense counsel in defending him.

While such a statement might have raised a "substantial question of possible doubt" as to Jacobs's competency were it before the trial court, it is irrelevant to this case. "[I]n determining whether a trial court denied due process in refusing a competency hearing, ... the focus should be on what the trial court did *in light of what it then knew* of the defendant." *Young,* 780 P.2d at 1237 (emphasis added) (citing *People v. Harris,* 109 A.D.2d 351, 491 N.Y.S.2d 678, 684 (N.Y.App. Div.1985)). Put another way, we "consider only those facts that were before the [trial] court when the plea was entered." *York,* 875 P.2d at 595. We are unwilling to substitute the judgment of one mental health professional ten years after the fact for the conclu-

1994) (noting that "[t]he test for competency to plead guilty is the same as competency to stand

trial").

sion unanimously reached by three such professionals at the time the plea was entered. As Dr. Pray himself admits, the experts who examined Jacobs at the time he entered his plea were in the best position to determine whether he could assist his counsel in his defense and whether he was otherwise competent to stand trial. Therefore, because Dr. Pray's report was unavailable to the trial court in 1984, we do not consider it in our determination of whether the trial court erred in failing to hold a competency hearing.

¶ 19 In conclusion, Jacobs has not raised any issues that persuade us to believe that the trial court had a "substantial question of possible doubt" as to his competency to enter a guilty plea. Therefore, we hold that the post-conviction court was correct in ruling that the trial court did not err in failing to hold sua sponte a competency hearing.

## II. JACOBS'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL

¶ 20 The next issue presented is whether Jacobs's counsel was ineffective in failing to request a competency hearing and allowing him to enter a plea in its absence, thus violating his right to assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution. An ineffective assistance of counsel claim presents a mixed question of law and fact. *Parsons v. Barnes,* 871 P.2d 516, 518 (Utah 1994). Accordingly, we review the post-conviction court's legal conclusions for correctness while we review its factual findings for clear error. *See id.*

¶ 21 The United States Supreme Court, in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), established the two-prong test that determines whether a criminal defendant's Sixth Amendment right to effective assistance of counsel has been violated. *See id.* at 687–88. As formulated by this court, that test is as follows: "To prevail, a defendant must show, first, that his counsel rendered a deficient performance in some demonstrable manner, which performance fell below an objective

standard of reasonable professional judgment and, second, that counsel's performance prejudiced the defendant." *Parsons,* 871 P.2d at 521 (quoting *Bundy v. Deland,* 763 P.2d 803, 805 (Utah 1988)).

¶ 22 Jacobs contends that his counsel's "performance fell below an objective standard of reasonable professional judgment" because his counsel allowed him to plead guilty without pursuing a competency hearing. In support of this contention, Jacobs notes several factors that should have led his counsel to request such a hearing: (1) his bizarre behavior after arrest, (2) contradictions in the alienists' reports, i.e., findings that he was actively psychotic and otherwise mentally ill and yet competent to stand trial, and (3) the trial court's expressed willingness to conduct a competency hearing before proceeding to trial.

¶ 23 These factors fail to demonstrate that Jacobs's counsel's "performance fell below an objective standard of reasonable professional judgment." First, Jacobs's behavior after arrest was, in fact, considered by each of the experts in reaching their opinions. Indeed, this behavior prompted the examinations. We find that it was a reasonable exercise of professional judgment for Jacobs's counsel to rely on the experts' unanimous conclusion that such behavior did not make him incompetent to stand trial. Second, the concept of competency to stand trial is a narrower one than that of mental illness. As shown above, the alienists' reports were not contradictory, as Jacobs contends, merely because they concluded that although he was mentally ill, he was still competent to stand trial. Finally, all of the alienists determined that Jacobs was competent to stand trial, and the trial court found him competent to do so, as well. In light of these uniform findings, we find that it was reasonable for defense counsel to forego the competency hearing and allow Jacobs to plead guilty to one count of rape of a child in exchange for dismissal of six other charges—one count of aggravated sexual assault, one count of aggravated burglary, another count of rape of a child, two counts of sexual abuse of a child, and one count of

sodomy upon a child.[4]

## CONCLUSION

¶ 24 Jacobs has not demonstrated that the post-conviction court erred in dismissing his petition for extraordinary relief. The trial court did not err in failing to hold a competency hearing sua sponte, and Jacobs's trial counsel did not render ineffective assistance. Therefore, we affirm the post-conviction court's dismissal of Jacobs's petition.

¶ 25 HOWE, Chief J., RUSSON, Associate Chief J., DURHAM, J., and WILKINS, J., concur in DURRANT'S, J., opinion.

4. Because Jacobs failed to show that his trial counsel's performance "fell below an objective standard of reasonable professional judgment," there is no need to consider the "prejudice" prong of the test for effectiveness of counsel.