2011 UT App 341

**STATE of Utah, Plaintiff and Appellee,**

v.

**Brian William POUNDSTONE, Defendant and Appellant.**

**No. 20090597–CA.**

Court of Appeals of Utah.

Oct. 6, 2011.

Marea A. Doherty, Duchesne, for Appellant.

Mark L. Shurtleff and Kris C. Leonard, Salt Lake City, for Appellee.

Before Judges ORME, ROTH, and CHRISTIANSEN.

## MEMORANDUM DECISION

ROTH, Judge:

¶ 1 Defendant Brian William Poundstone raises several issues challenging his entry of a plea to aggravated kidnapping, a first degree felony, *see* Utah Code Ann. § 76–5–302(1)(b)(iv), (3) (2008). We affirm.

¶ 2 After Poundstone was charged by information with aggravated kidnapping and aggravated assault, his trial counsel request-

ed time to complete a competency evaluation. *See generally Jacobs v. State*, 2001 UT 17, ¶ 12, 20 P.3d 382 ("A mentally incompetent defendant can provide no defense, and proceedings against such a defendant do not comport with due process." (internal quotation marks omitted)). Counsel later told the district court, "[I've] made a decision not to file the request for a competency evaluation [because] ... Poundstone is fully cognizant of...." Counsel's explanation was, however, cut off by the district court. Thereafter, the issue of Poundstone's competency was not raised again by either his trial counsel or the district court, and Poundstone eventually entered a plea to aggravated kidnapping. Poundstone now asserts that he was not competent to enter a plea and argues that the district court committed plain error and that his trial counsel was ineffective for failing to pursue a competency hearing.

[1] ¶ 3 In arguing that the district court committed plain error by failing to sua sponte order a competency hearing, Poundstone asserts that it should have been obvious to the district court that a competency hearing was necessary because prior to entering his plea Poundstone had exhibited a pattern of behavior that raised the question of whether he was competent. *See generally State v. Munguia*, 2011 UT 5, ¶ 12, 253 P.3d 1082 ("To demonstrate plain error, a defendant must establish that ... an error exists ... [that] should have been obvious to the trial court." (internal quotation marks omitted)); *Jacobs*, 2001 UT 17, ¶ 13, 20 P.3d 382 ("A trial court must hold a competency hearing when there is a substantial question of possible doubt as to a defendant's competency at the time of the guilty plea." (internal quotation marks omitted)). The State, however, argues that Poundstone's claim of plain error "suffers from two insurmountable problems." First, the State asserts that Poundstone has "fail[ed] to provide any record support for the information on which he relies" to establish his questionable behavior. *See generally State v. Theison*, 709 P.2d 307, 309 (Utah 1985) (per curiam) ("Appellant has the burden when raising objections on appeal to see that the record contains the materials necessary to support his appeal. We cannot

speculate on the existence of facts that do not appear in the record. When crucial matters are not included in the record, the missing portions are presumed to support the action of the trial court."). Second, the State asserts that Poundstone is unable "to establish that such information ever reached the trial court." *See generally Jacobs,* 2001 UT 17, ¶ 18, 20 P.3d 382 ("[I]n determining whether a trial court [improperly] denied ... a competency hearing...., we consider only those facts that were before the [trial] court when the plea was entered." (second omission and last alteration in original) (citation and internal quotation marks omitted)). Poundstone responds by asserting that "[i]t is clear from the record ... that at some point [his] behavior ... was communicated to the [district court], because [the court] queried ... if a psychosexual report was needed" after accepting his plea.[1] Based only on this, Poundstone asserts that "[c]ertainly by that point, the [district c]ourt had a basis for sua sponte, ordering a competency hearing." However, as the State asserts, it is "purely speculative" whether the district court knew of Poundstone's behavior, and the existence of his purported behavior is not evidenced in the record. We therefore cannot conclude that the district court was aware of any error regarding the issue of Poundstone's competency.[2]

■ ¶ 4 Poundstone similarly argues that his trial counsel's performance was deficient because she failed to pursue a competency evaluation. *See generally Munguia,* 2011 UT 5, ¶ 13, 253 P.3d 1082 ("[T]o prove ineffective assistance of counsel, [a] defendant must show ... that counsel's performance was objectively deficient...." (second alteration in original)). Poundstone, however, faces the same obstacle in mounting his ineffective assistance of counsel claim as his plain

error claim. Although it is more reasonable to assume that Poundstone's trial counsel would be aware of his purported behavior, the only record evidence supporting that assumption is the fact that counsel initially requested that the court allow time to pursue a competency evaluation. But despite that initial request, Poundstone's trial counsel eventually decided against pursuing a competency evaluation, having concluded that Poundstone was "fully cognizant." Although the entire explanation for why she chose not to pursue a competency evaluation is not on the record, the information that is provided suggests—as is presumed in ineffective assistance of counsel claims—that Poundstone's trial counsel made a decision in the exercise of her professional judgment not to pursue a competency evaluation. *See generally State v. C.D.L.,* 2011 UT App 55, ¶ 13, 250 P.3d 69 ("Trial counsel's actions ... are presumed to be part of a sound trial strategy ... within the wide range of reasonable professional assistance." (second omission in original) (internal quotation marks omitted)), *cert. denied,* 255 P.3d 684 (Utah 2011). And as we have discussed, there is no record evidence of any of the purported behavior that Poundstone asserts should have spurred his counsel to follow through with a competency hearing. *See generally id.* ¶ 39 ("[T]he burden of proving that counsel was ineffective is placed firmly upon the defendant," and "an inadequate record ... will be construed in favor of a finding that counsel performed effectively." (internal quotation marks omitted)); *see also Munguia,* 2011 UT 5, ¶ 30, 253 P.3d 1082 ("[P]roof of ineffective assistance of counsel cannot be a speculative matter but must be a demonstrable reality." (internal quotation marks omitted)). Given the lack of record evidence for Poundstone's claim combined with the strong presumption of effectiveness

---

1. Notably, a psychosexual evaluation is not generally the professional vehicle used to address competency. *See generally Jacobs v. State,* 2001 UT 17, ¶ 12, 20 P.3d 382 ("In determining whether a defendant is competent to plead guilty, the trial court must consider whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." (internal quotation marks omitted)).

2. Poundstone also argues that he may raise this issue for the first time on appeal due to "exceptional circumstances." *See generally State v. Munguia,* 2011 UT 5, ¶ 11, 253 P.3d 1082 (explaining the exceptional circumstances doctrine). We, however, see no basis to apply such a rarely used exception in this case.

that is afforded to trial counsel, *see id.* ("When reviewing ineffective assistance of counsel claims, we strongly presume that trial counsel provided adequate assistance and that any action complained of was sound trial strategy."), we cannot conclude that Poundstone's trial counsel was ineffective in failing to pursue a competency hearing.

██ ¶ 5 Poundstone next argues that the district court erred in accepting his plea and abused its discretion in denying his subsequent motion to withdraw his plea. *See generally State v. Lovell,* 2011 UT 36, ¶ 7, 686 Utah Adv. Rep. 18, 262 P.3d 803 ("[T]he ultimate question of whether the [trial] court strictly complied with constitutional and procedural requirements for entry of a . . . plea is a question of law that is reviewed for correctness." (second alteration in original) (internal quotation marks omitted)); *State v. Beckstead,* 2006 UT 42, ¶ 7, 140 P.3d 1288 (providing that challenges to the denial of a motion to withdraw a guilty plea are generally reviewed for an abuse of discretion).

¶ 6 In support of his position that the district court erred in accepting his plea, Poundstone argues that the district court failed to strictly comply with rule 11(e) of the Utah Rules of Criminal Procedure. *See* Utah R.Crim. P. 11(e) (establishing necessary findings the court must make before accepting a defendant's plea); *Lovell,* 2011 UT 36, ¶¶ 11–14, 262 P.3d 803 (providing that strict compliance with rule 11(e) is required to accept a plea). In accepting Poundstone's plea, the district court engaged in the following colloquy with him:

> THE COURT: Okay. Mr. Poundstone, are you aware that you don't have to do this? That you can have a jury trial?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: And by entering into this plea agreement you will not get to have that trial. You give up your right to have your lawyer confront and cross-examine witnesses. You're giving up your right to appeal if convicted?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You're giving up your right to have you in here in civilian clothes. The jury won't know that you're in custody. I will instruct the jury that if any of them had a reasonable doubt after the State's evidence, they should not vote to convict you. Those are the primary rights that you are giving up. There's an affidavit in advance of guilty plea. The paperwork there on the podium. Have you gone over that? Have you read it?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand it?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. That explains all of the rights that you're giving up. In addition to the ones we've talked about there are many others there. You should understand if you sign that document, it will be put in your file and it will be noticed to anyone that looks in there that you've given up all those rights. Do you understand that?
>
> THE DEFENDANT: Yes.

After accepting the factual basis for the plea, the district court instructed Poundstone to "sign off on that plea affidavit" and asked him once again if he "ha[d] any questions." Poundstone responded in the negative and signed the plea affidavit in the presence of the court. The district court then accepted Poundstone's plea to "the charge . . . of . . . aggravated kidnapping."

¶ 7 Although the district court discussed only some of the rights Poundstone was waiving by entering a plea, the court specifically acknowledged the plea affidavit, confirmed that Poundstone had read and understood its contents, and advised Poundstone that the plea affidavit would be made a part of his file. *See generally* Utah R.Crim. P. 11(e) ("The[ ] findings [required by rule 11(e) ] may be based on . . . a written statement reciting these factors after the court has established that the defendant has read, understood, and acknowledged the contents of the statement."); *Lovell,* 2011 UT 36, ¶¶ 14–15, 262 P.3d 803 ("Strict compliance . . . does not mandate a particular script or rote recitation of the rights listed" but may be established if the "contents of a written affidavit that the record reflects was read, understood, and acknowledged by the defendant and the court . . . [are] incorporated into the record." (emphasis omitted) (internal

quotation marks omitted)). The district court, therefore, properly incorporated the plea affidavit and, in so doing, strictly complied with rule 11(e).

¶ 8 Poundstone further contends, however, that the plea affidavit itself contains errors. In this regard, it appears that Poundstone is alleging that because of the purported errors the plea affidavit cannot be a reliable source upon which to establish strict compliance with rule 11(e).

¶ 9 Poundstone first argues that the plea affidavit inaccurately states that he entered a guilty plea rather than a no contest or *Alford* plea. *See generally* Utah R.Crim. P. 11(b) ("A defendant may plead ... guilty [or] no contest."); *State v. Stilling*, 856 P.2d 666, 671–72 (Utah Ct.App.1993) (explaining that an *Alford* plea is where a defendant enters a plea without admitting guilt to the offense charged (citing *North Carolina v. Alford*, 400 U.S. 25, 38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970))). Poundstone responded to the district court's rule 11(e) colloquy by pleading "guilty," and at first glance the plea affidavit seems to confirm that Poundstone simply entered a guilty plea to aggravated kidnapping. However, in accepting Poundstone's plea, the district court inquired about the factual basis for the offense, and Poundstone's trial counsel informed the court that the defense and the State had agreed that "the facts that the State presents are the ones that they would use if [they] were to go to trial" but "Poundstone does [no]t agree with the way the facts are." After hearing the State's factual basis, the district court asked Poundstone's trial counsel whether she believed that "if the facts were reasonably believed by a jury, that there is a substantial chance of conviction." Poundstone's trial counsel responded that she and Poundstone "believe[d] that ... there's a substantial risk of conviction." The district court then accepted the factual basis for the plea. *See generally* Utah R.Crim. P. 11(c) ("A defendant may plead no contest only with the consent of the court."); *id.* R. 11(e)(4)(B) ("A factual basis [for a plea] is sufficient if it establishes that the charged crime was actually committed by the defendant or, if the defendant refuses or is otherwise unable to

admit culpability, that the prosecution has sufficient evidence to establish a substantial risk of conviction."); *Stilling*, 856 P.2d at 671, 672–74 (explaining that where a defendant enters an *Alford* plea, "the record must demonstrate that there is evidence of the defendant's actual guilt"). Upon hearing this exchange, Poundstone did not object to his counsel's characterization of his plea. In addition, consistent with the factual basis provided to the district court, in the plea affidavit following the State's factual basis for the plea is the handwritten explanation, "I agree that these are the facts the State would present if we were to go to trial." This entry is consistent with the district court's colloquy. It is, therefore, apparent from the entirety of the plea affidavit and the record that Poundstone's plea was in substance a no contest or *Alford* plea.

¶ 10 In pointing out this purported inaccuracy, Poundstone does not argue that any mislabeling of his plea has harmed him or otherwise contravenes rule 11(e). Rather, he only asserts that "[i]f the parties intended to proceed on the basis that the facts, though in dispute, posed sufficient evidence to establish a substantial risk of conviction instead of ... [him] admitting to the facts, then the parties should have made sure the [plea] affidavit and the record accurately reflected that." (Emphasis omitted.) As discussed, it is apparent from the plea affidavit and the record that Poundstone entered a no contest or *Alford* plea, and it is equally apparent that Poundstone approved of the manner in which the factual basis was presented to the district court. And because the factual basis for Poundstone's plea does not contravene rule 11(e), we see no error here of any significance to the validity of the plea itself.

¶ 11 Second, Poundstone argues that the plea affidavit's statement of the legal basis for the plea improperly includes reference to the mental state of intent to commit a sexual offense without providing a factual basis for that mental state. In stating the legal elements of aggravated kidnapping, the plea affidavit provides alternative mental states of intent "to inflict bodily injury on or to terrorize the victim ... or [intent] to commit a sexual offense." These are two of several alternative mental states set out in the ag-

gravated kidnapping statute. *See* Utah Code Ann. § 76-5-302(1)(b) (2008). The factual basis provided in the plea affidavit, however, states that Poundstone acted "with intent to inflict bodily injury ... or to terrorize" the victim. It is therefore apparent that the "intent to commit a sexual offense" language is mere surplusage, and we see no harm in its inclusion.[3]

¶ 12 Third, Poundstone argues that the plea affidavit misstates the date of the offense. In particular, the plea affidavit states that the offense occurred on February 2 when it appears that the offense actually occurred on March 2. Poundstone argues that this "error was not noted ... at any time, though the [plea affidavit] was purportedly reviewed." Poundstone, however, concedes that this inaccuracy is "likely to be attributed as a ministerial error." We agree that the error is likely clerical, and fail to see how such an error could invalidate the entire plea affidavit.[4]

¶ 13 Whether considered individually or collectively, these inaccuracies do not undermine the reliability of the plea affidavit as a basis to establish the district court's strict compliance with rule 11(e). And notably, Poundstone does not otherwise argue that the plea affidavit omitted the rights he waived in entering a plea. To the contrary, all the rights that Poundstone alleges the district court should have explained during the rule 11(e) colloquy are included in the plea affidavit. *See generally State v. Lovell*, 2011 UT 36, ¶ 14, 686 Utah Adv. Rep. 18, 262 P.3d 803 ("[S]trict compliance [with rule 11] can be accomplished by [properly incorporating a plea affidavit] so long as no requirement of the rule is omitted." (internal quotation marks omitted)). We therefore see no error in the district court's acceptance of Poundstone's plea.

■ ¶ 14 As a final matter, Poundstone argues that the district court abused its dis-

cretion in denying his motion to withdraw his plea because he did not understand that in pleading to aggravating kidnapping his sentence could be for life. *See generally* Utah Code Ann. § 76-5-302(3)–(6) (providing sentencing guidelines for aggravated kidnapping); *id.* § 76-5-302(4) (providing that the sentence for aggravated kidnapping may be for six, ten, or fifteen years to life). The plea affidavit—which Poundstone represented to the district court he had read and understood, *see supra* ¶ 6—states in at least two places that his sentence "could be for life." The most significant reference to Poundstone's sentence in the plea affidavit is included in the section that describes his plea bargain with the State: "The State agrees to recommend that [Poundstone] be sentenced to an indeterminate term of not less than six (6) years and could be for life in the Utah State Prison." Further, at the plea hearing, the district court stated that it "need[ed] to advise [Poundstone]" that a "[f]irst-degree felony could impose a ... five to life sentence." Poundstone's trial counsel then interjected, stating that the penalty could be for "6, 10 or 15 to life." The district court then repeated, "6, 10 or 15 to life, okay" and again addressed Poundstone, asking, "You understand that?" Poundstone replied, "Yes, sir." The record thus establishes that Poundstone entered his plea understanding that his sentence could be for life, and we therefore conclude that the district court was within its discretion in denying Poundstone's motion to withdraw his plea.

¶ 15 Accordingly, we affirm.

¶ 16 WE CONCUR: GREGORY K. ORME and MICHELE M. CHRISTIANSEN, Judges.

---

3. The information charging Poundstone with aggravated kidnapping referenced both mental states, and it seems likely that both mental states were simply carried over to the plea affidavit from the information.

4. The conduct for which Poundstone was charged with aggravated kidnapping and aggravated assault occurred on March 2. However, the information charging Poundstone recites that the aggravated kidnapping offense occurred on February 2 and that the aggravated assault offense occurred on March 2. It thus appears that the misstated date for the aggravated kidnapping offense in the plea affidavit was also carried over from the information. *See supra* ¶ 11 n. 3. It is noteworthy that Poundstone has not argued that this erroneous date has resulted in any prejudice.