**2018 UT App 123**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
VERNON RICHARD BIEBINGER,
Appellant.

Opinion
No. 20160460-CA
Filed June 21, 2018

Fourth District Court, Provo Department
The Honorable Derek P. Pullan
No. 141400846

Emily Adams, Attorney for Appellant

Sean D. Reyes and William M. Hains, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN and DIANA HAGEN concurred.

HARRIS, Judge:

¶1     A jury convicted Defendant Vernon Richard Biebinger of various crimes stemming from a traffic stop gone awry. He appeals his convictions, arguing that he was incompetent at the time of his trial and that his counsel was constitutionally ineffective for failing to file a competency petition during trial. We reject Defendant's arguments and affirm his convictions.

### BACKGROUND

¶2     In March 2014, Defendant was driving a car with three passengers when one of the passengers alerted him that there was a police car behind him. In response, Defendant quickly

executed a left turn and nearly hit a bicyclist, prompting the officer in the police car (Officer) to initiate a traffic stop. During the stop, Officer noticed that Defendant was "fidgeting in the center console area" and kept glancing towards the center console. When Officer asked Defendant for his registration and proof of insurance, Defendant claimed he "couldn't locate those items," and continued nervously glancing towards the center console while talking to Officer. Officer asked Defendant if there were any weapons in the vehicle. Defendant responded "just these," and produced a knife and set of brass knuckles. At this point, Officer returned to his vehicle to begin checking Defendant's identification for warrants, and called for backup. After backup officers arrived, they observed Defendant "moving around a lot" in the vehicle, and asked him to exit the vehicle and sit on the curb where they could more easily observe him.

¶3 Defendant did not comply with this instruction. Instead, he began yelling and then drove quickly away. Defendant led several police officers on a high-speed chase, which ultimately ended in a cul-de-sac when Defendant's vehicle became stuck between an RV and a fence. Defendant and all of the other occupants exited the vehicle, and Defendant ran but was eventually apprehended by police. During a subsequent search of the vehicle, police found a stolen handgun on the driver's side floorboard. The police also found a second handgun discarded outside the vehicle.

¶4 Police interviewed Defendant shortly after the incident. During the interview, Defendant stated that he ran from the police because he believed an acquaintance of his had planted guns in the car to "set him up." When confronted by an officer who stated that Defendant's story "[made] no sense," Defendant reiterated that one of the passengers in the car (Passenger) had raised the possibility of planted evidence and that this had prompted Defendant to flee. Defendant also told police that he

had initially intended to exit the vehicle when ordered to do so by backup officers, but that Passenger had told him to "go." Officers noted that Defendant did not appear to be exiting the vehicle at that point in time.

¶5 The State ultimately charged Defendant with obstructing justice, failing to respond to a police officer's signal to stop, theft by receiving stolen property, reckless endangerment, and possession of a firearm by a restricted person.

¶6 Prior to trial, Defendant's first attorney filed a petition raising the question of whether Defendant was competent to stand trial. In the petition, counsel asserted that Defendant might not be competent to assist in the preparation of the defense. The court promptly granted the petition, and appointed two mental health experts to examine Defendant. Several weeks later, Defendant retained new counsel, and this second attorney represented Defendant at the competency hearing. At that hearing, the State informed the court that the mental health experts had been unable to contact Defendant for a complete evaluation and thus were not able to issue a report as to his competency. Defendant's second attorney represented to the court that, as he understood it, "the issue [with Defendant's competency] originally was" that Defendant had been previously diagnosed "bipolar and schizophrenic," but that Defendant had "been on his medication . . . for 30 days" by the time of the competency hearing. Because of this, Defendant's second attorney withdrew the competency petition, stating that, while Defendant was on his medication, counsel believed that Defendant understood the potential punishment he might face, the role of the parties and of the court, and the details of his case sufficiently to "help assist" in his own defense. Based on these representations, the trial court considered the competency petition withdrawn, and conducted no further proceedings thereon.

¶7    After the competency hearing, but before trial, Defendant's second attorney withdrew as counsel for Defendant. The trial court appointed a third attorney (Trial Counsel) to represent Defendant, and Trial Counsel represented Defendant through trial.

¶8    At trial, the State called several police officers to testify about the events that occurred during the traffic stop. The State also called Passenger as a witness, who testified that he was "really shocked" when Defendant began fleeing from police, and that Defendant told Passenger that he was sorry for fleeing but that he had "things on [him]." Passenger testified that, upon saying this, Defendant produced an item wrapped in cloth that Passenger eventually determined was a handgun. Passenger testified that Defendant threw the gun into Passenger's lap and asked him to throw it out the window, at which point Passenger refused. Passenger also described seeing a second firearm in Defendant's lap at some point during the chase. Passenger testified that the guns were not his.

¶9    After consulting with Trial Counsel, Defendant elected to testify in his own defense. During his testimony, Defendant presented a much different account than either (a) the account Passenger had described in his testimony or (b) the account Defendant had provided during his initial interview with police. At trial, Defendant testified that, shortly after being stopped, Passenger informed Defendant that he (Passenger) possessed "things," which Defendant initially understood to be a reference to "drugs." Defendant testified that, after being told that Passenger had "things," an officer asked Defendant to get out of the car, and when Defendant asked why he needed to get out, the officer began to threaten him and tried to open the car door. Defendant further testified that, while the officer was trying to open the car door, Defendant saw Passenger move in a way that triggered a memory Defendant had of Passenger attempting to

sell Defendant a gun. Defendant testified that, based on that memory, he realized that the "things" Passenger had said he possessed were firearms rather than drugs. Upon realizing this, Defendant became afraid that Passenger would try to "blast his way out" of the encounter with police, and Defendant testified that it was this fear that prompted him to flee from police. In keeping with this account, Defendant testified that the firearms belonged to Passenger, and not to him.

¶10    Defendant's direct testimony often took the form of long, monologue-like statements, where he would testify for some time without being prompted by a question from counsel. At one point, Trial Counsel told him they could "take a second" if Defendant needed a break. On cross-examination, the State first asked Defendant if he was okay, observing he appeared "emotional." Defendant replied that he was "all right." The State then confronted Defendant with inconsistencies in his trial testimony, asking him how he knew that Passenger had a gun if, by his own testimony, Passenger had never shown him the gun in the car and he had initially assumed Passenger had drugs. Defendant responded that "the situation and tone and everything going on" had convinced him Passenger had a gun, even though he did not actually see one. During cross-examination, Defendant also maintained that he had told the police in his initial interview about his basis for believing Passenger had a gun. When the State confronted him with the discrepancy between that testimony and the account he had given police during his initial interview (that he ran from the police because Passenger had raised the possibility that a third party had placed a firearm in Defendant's car to set him up), Defendant initially stated that he did not remember saying those things to police. When the State pressed him on that answer, however, Defendant admitted that he did remember saying "something . . . like that, yes." The State then asked if Defendant had told police in his initial interview about Passenger's alleged

statement that he "had some things." Defendant admitted that he did not, and asserted that he failed to do so because he was afraid of Passenger. Defendant finally asserted that he did not remember what he had or had not said during his initial interview.

¶11 Also during cross-examination, the State played video-recorded portions of Defendant's initial police interview, and asked Defendant about them. When confronted with the discrepancies between his trial testimony and his statement during the initial interview, Defendant began giving inconsistent answers, at times stating that he did not remember what he had previously said, and sometimes giving conflicting accounts as to why his interview differed from his trial testimony. At one point, Defendant acknowledged that "[w]hat I'm saying on the stand right now is completely different from [my interview testimony]," and that the discrepancy was because he was "scared" during his interview. After cross-examination, Trial Counsel elected to forgo any redirect examination. Trial Counsel also did not ever renew or re-file any competency petition based on events that occurred during trial.

¶12 At the conclusion of the evidence, the jury found Defendant guilty on all charges. Defendant appeals.

ISSUE AND STANDARD OF REVIEW

¶13 Defendant raises a single issue on appeal: whether Trial Counsel was constitutionally ineffective for failing to bring a competency petition based on Defendant's actions during trial. An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law. *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162. To prevail on an ineffective assistance of counsel claim, Defendant "must show: (1) that [Trial Counsel's] performance was objectively deficient, and (2) a reasonable

probability exists that but for the deficient conduct [D]efendant would have obtained a more favorable outcome at trial." *See id.*

ANALYSIS

¶14 Defendant contends that Trial Counsel was constitutionally ineffective for failing to bring a competency petition during trial. Defendant bases this contention partially on information that is not in the record, but which he seeks to admit through a motion to remand. Under rule 23B of the Utah Rules of Appellate Procedure, Defendant may seek to remand the case to the trial court "for entry of findings of fact[] necessary for the appellate court's determination of a claim of ineffective assistance of counsel." Utah R. App. P. 23B(a). A rule 23B motion must "(1) contain a nonspeculative allegation of facts that (2) do not fully appear in the record, which, if true, (3) could support a determination that counsel's performance was deficient, and (4) demonstrate that the defendant suffered prejudice as a result." *State v. Curtis*, 2013 UT App 287, ¶ 15, 317 P.3d 968. In addition, rule 23B motions must "be accompanied by affidavits . . . that show the claimed deficient performance of the attorney . . . [and] that show the claimed prejudice suffered by the appellant as a result of the claimed deficient performance." Utah R. App. P. 23B(b).

¶15 In this case, Defendant attempts to meet that burden by attaching affidavits to his rule 23B motion that assert a number of facts Defendant wishes to add to the record. First, Defendant seeks to add that he was diagnosed in 2011 with bipolar disorder, generalized anxiety disorder, and polysubstance dependence. Second, Defendant seeks to add that he was prescribed medications to treat those disorders, but that he was not taking those medications at the time of trial. Third, Defendant seeks to add Trial Counsel's affidavit, wherein Trial Counsel makes several observations, including the following:

that, at trial, Defendant "completely changed his story multiple times," and that Defendant's testimony "was not consistent with" what he had previously told Trial Counsel or police; that Defendant did not seem to "remember anything" Trial Counsel had reviewed with him prior to trial; that Defendant "almost appeared to be confused" and was "noticeably agitated" as his testimony progressed; and that after testifying Defendant was "extremely angry" with Trial Counsel. Fourth, Defendant wishes to add to the record an assertion that, during trial, he "experienced overwhelming anxiety," was "shaking," had suicidal thoughts, and heard a voice in his head telling him "don't trust your attorney."

¶16   Defendant maintains that these facts, if added to the record, would demonstrate that Trial Counsel rendered constitutionally ineffective representation. We disagree, because the facts he seeks to add, even if true, would not establish either "(1) that [Trial Counsel's] performance was objectively deficient," or "(2) [that] a reasonable probability exists that but for the deficient conduct," Defendant would have been found incompetent and thereby "obtained a more favorable outcome at trial." *Clark*, 2004 UT 25, ¶ 6.

¶17   First, even considering all of the facts Defendant asks us to consider—the facts already in the record combined with the rule 23B facts Defendant wishes to add to the record—we are not persuaded that Trial Counsel should have believed that Defendant was incompetent. As an initial matter, some of the facts Defendant asks us to consider were not known to Trial Counsel at the time. For instance, Defendant does not claim that he ever told his attorney that he was hearing voices, or that he was experiencing suicidal thoughts. An attorney cannot be charged with providing ineffective assistance for failing to bring a competency petition based on facts he does not know and has no reason to know. *See State v. Lee*, 2011 UT App 356, ¶ 7, 264

P.3d 239 (noting that counsel cannot be expected to file a competency petition if counsel "had no basis to suspect [the defendant] was incompetent").

¶18 And the facts that *were* known to Trial Counsel at the time simply do not amount to obvious signals of incompetency. Certainly, "mere distress, nervousness, or emotional upset" during a court proceeding "do[] not establish mental incompetence." *State v. Young*, 780 P.2d 1233, 1237 (Utah 1989). Even "the fact that a person is mentally ill, displays bizarre, volatile, and irrational behavior, or has a history of mental illness, does not mean that he or she is incompetent to stand trial." *Jacobs v. State*, 2001 UT 17, ¶ 16, 20 P.3d 382 (quotation simplified). Instead, a defendant is incompetent to proceed only if his mental disorder renders him unable "to have a rational and factual understanding of the proceedings against him or of the punishment specified for the offense charged," or "to consult with his counsel and to participate in the proceedings against him with a reasonable degree of rational understanding." Utah Code Ann. § 77-15-2(1)–(2) (LexisNexis 2017).

¶19 Trial Counsel was certainly aware, after Defendant had testified, that Defendant had been an ineffective witness, and may even have thought that Defendant's performance on the stand hurt rather than helped the defense. While testifying, Defendant was nervous and agitated, spoke in long monologues, and gave testimony that was inconsistent with his previous statements to police. But many witnesses, for better or for worse, act similarly on the witness stand. Defense attorneys cannot reasonably be expected to file a competency petition every time a client performs inadequately on the witness stand.

¶20 Defendant argues that this case is different from the many cases where a witness performs badly on the witness stand, because Trial Counsel should have known that Defendant's first

attorney had filed a competency petition that was later withdrawn only because of Defendant's second attorney's representation that Defendant was competent so long as he took medication. Defendant asserts that Trial Counsel should have discovered that Defendant was not taking his medication and should have at that point realized that Defendant's poor performance on the stand might have been related to mental health issues.

¶21 Even assuming that Trial Counsel should have been aware of the previously-filed competency petition and the reasons for its withdrawal, it does not necessarily follow that Trial Counsel's knowledge of the petition should have impacted Trial Counsel's assessment of Defendant's mental state at trial. Competency is assessed contemporaneously, at a present moment in time, and previous mental health issues are not necessarily indicative of present incompetency. In fact, as our supreme court has previously noted, "a prior history of mental illness" stemming from a diagnosis "some years before" a later emotional episode is not by itself sufficient to "raise[] a reasonable doubt as to [a] defendant's competence" if the episode itself does not do so.[1] *Young*, 780 P.2d at 1238; *see also Jacobs*, 2001 UT 17, ¶¶ 22–23 (holding that even a defendant's diagnosis as "actively psychotic" during pretrial proceedings coupled with "bizarre behavior" by that same defendant was not sufficient, on the facts of that case, to mandate that counsel bring

---

1. Sometimes, an episode that occurs during trial will be severe enough, by itself, to raise serious doubts about a defendant's competency to stand trial. *See, e.g.*, *Drope v. Missouri*, 420 U.S. 162, 180 (1975) (the defendant attempted to commit suicide during the pendency of the trial); *State v. Wolf*, 2014 UT App 18, ¶ 31, 319 P.3d 757 (same). It should go without saying that the facts of those cases are much more serious than the facts presented here.

a competency petition). This is especially true where a defendant, despite instances of "emotional upset," manages to give "clear" and "coherent" testimony that "[presents] an alternative explanation for his . . . activities on the day of the alleged crime." *Young*, 780 P.2d at 1238.

¶22   That was precisely the situation that confronted Trial Counsel in this case. While Defendant was certainly visibly upset during and after his testimony, he nonetheless managed to coherently describe an alternative explanation for his actions in running from the police, even though this explanation was contradictory to prior explanations Defendant had offered. It does not follow from this conduct that a reasonable attorney would necessarily have known or suspected that Defendant was incompetent, even where a prior competency petition had been filed. Accordingly, Trial Counsel's performance in failing to file a competency petition was not objectively deficient. *See Lee*, 2011 UT App 356, ¶ 7 (noting that failure to file a competency petition does not constitute objectively deficient performance if the "plausible reason" for failing to file is that counsel has "had no basis to suspect [the defendant] was incompetent").

¶23   Second, we are unpersuaded that Defendant was prejudiced by Trial Counsel's conduct, even assuming that Trial Counsel's performance could somehow be considered deficient. Even if Trial Counsel had filed a competency petition during trial, there is nothing in the record or in Defendant's rule 23B motion that gives us any confidence that competency proceedings would have resulted in a determination that Defendant was incompetent to stand trial.

¶24   As noted, mental illness is not equivalent to incompetency to stand trial. *See Jacobs*, 2001 UT 17, ¶ 16 (stating that "fitness to stand trial is a much narrower concept than moral or social wellness" (quotation simplified)). Many individuals suffer from

mental illness, yet are perfectly able "to have a rational and factual understanding of the proceedings against [them] or of the punishment specified for the offense charged" or "to consult with [their] counsel and to participate in the proceedings against [them] with a reasonable degree of rational understanding." Utah Code Ann. § 77-15-2(1)–(2). While Defendant certainly alleges that he felt confused, paranoid, and anxious during trial, and even that he was hearing voices, Defendant does not sufficiently explain how these facts made him incapable of consulting with his counsel, understanding the charges against him, or participating in his defense at the time of trial. Indeed, Defendant *did* participate in his defense at trial—after consulting with Trial Counsel, Defendant decided to testify—and our review of the transcript of Defendant's testimony does not leave us with an impression that Defendant was incapable of understanding the charges against him or even of the particular questions being posed to him. His answers made logical sense, even if they were not always consistent with previous testimony given and even if they were presented in a somewhat scattered manner.

¶25 Moreover, Defendant presents no evidence—even in connection with his rule 23B motion—that he would have likely been found incompetent had a petition been filed. Even the expert witness who provided Defendant a supporting affidavit is willing to state only that "there is a likelihood that [Defendant] was troubled by psychological symptoms during trial," and that "this is the kind of case that normally is referred for competency evaluation." Defendant's expert stops short of opining that there is any reasonable likelihood that Defendant would have been declared incompetent had a full evaluation been ordered. And based on the facts of this case—previous mental illness, very poor performance on the witness stand—we are not persuaded that Defendant has carried his burden of demonstrating that,

even if Trial Counsel had filed a competency petition during trial, it would have been likely to have made a difference.

## CONCLUSION

¶26    Trial Counsel was not ineffective for failing to file a competency petition based on Defendant's behavior during trial. Accordingly, we deny Defendant's rule 23B motion and affirm his convictions.

———————